**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LINDA SCHILLER-EGLES, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| -against- | **No. 23 Civ. 6790** |
| **THE PROMPTCARE COMPANIES, INC., d/b/a PROMPT CARE COMPANIES INC.** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **Defendant.** | |

\

Linda Schiller-Egles ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover underpayment caused by untimely wage payments and other damages for Plaintiff and similarly situated non-exempt hourly positions including but not limited to respiratory therapists and similarly situated hourly positions (collectively, "Hourly Workers") who work or have worked for The PromptCare Companies, Inc. ("Prompt Care" or "Defendant").

2.      Headquartered in New Providence, New Jersey, Prompt Care provides respiratory products and infusion therapy services throughout the United States

3.      To conduct their operations, Prompt Care operates over 40 locations and employs

1

over 300 Hourly Workers.

4.      At all relevant times Defendant has compensated Plaintiff and all other Hourly workers on an hourly basis.

5.      At all relevant times, Defendant has also paid Plaintiff and all other Hourly Workers stipends for signing up to be "on call". The stipend was to compensate employees for agreeing to be "on call", but not for time actually worked while "on call." As such, this stipend didn't cover Plaintiff and other Hourly Workers' hours worked while "on call" at their regular rate of pay for hours up to and including 40 per workweek, or at their overtime rate of pay for hours over 40 per work week.

6.      At all relevant times, Defendant failed to pay Plaintiff and all other Hourly Workers for all hours worked while "on call" at their agreed upon rate, for hours up to and including 40 per workweek.

7.      At all relevant times, Defendant failed to pay Plaintiff and all other Hourly Workers for all hours worked while "on call" at their overtime rate, for hours above 40 per workweek.

8.      At all relevant times, Defendant has compensated Plaintiff and all other Hourly Workers in New York on a bi-weekly basis.

9.      Despite being manual workers, Defendant has failed to properly pay Plaintiff and other Hourly Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned.

10.     In this regard, Defendant has failed to provide timely wages to Plaintiff and all other similarly situated Hourly Workers in New York.

11.     Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955)

12.     As such, the failure to provide wages owed to Plaintiff and all other similarly

situated Manual Workers, according to NYLL § 191 constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

13.    Defendant failed to provide Plaintiff and similarly situated Hourly Workers with an accurate statement of wages pursuant to NYLL § 195(3), as the paystubs provided failed to notate Plaintiff's and similarly situated Hourly Workers' correct number of hours they worked.

14.    Plaintiff relied on her paystubs to ensure that Defendant paid her the correct rate for her hours worked.

15.    Due to Defendant's failure to provide the correct number of hours worked on the wage statements provided to Plaintiff and similarly situated Hourly Workers, Plaintiff and similarly situated Hourly Workers were misinformed about the correct number of hours worked, and thus the correct amount of wages they were entitled to receive.

16.    Defendant's incorrect wage statements allowed Defendant to continue their unlawful wage and hour scheme without Plaintiff's or similarly situated Hourly Workers' awareness that they were being underpaid. Accordingly, Plaintiff and similarly situated Hourly Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, up to a total of five thousand dollars each pursuant to NYLL § 195(3).

17.    Plaintiff brings this action on behalf of herself and all similarly situated current and former Hourly Workers pursuant who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendant that has deprived Plaintiff

and other similarly situated employees of their lawfully earned wages.

18.    Plaintiff also brings this action on behalf of herself and all other similarly situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

## THE PARTIES

**Plaintiff**

**Linda Schiller-Egles**

19.    Linda Schiller-Egles ("Schiller-Egles") is an adult individual who is a resident of White Plains, New York.

20.    Schiller-Egles has been employed by Prompt Care as an Hourly Worker since in or around September 2019.

21.    Schiller-Egles is a covered employee within the meaning of the FLSA and the NYLL.

22.    A written consent for Schiller-Egles is being filed with this Class Action Complaint.

**Defendant**

**Prompt Care**

23.    Prompt Care is a foreign business corporation organized and existing under the laws of New Jersey.

24.    Prompt Care's principal executive office is located at 41 Spring Street, Suite 103A, New Providence, New Jersey 07974.

25.    Prompt Care was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

26.    Prompt Care has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied

to them.

27.    Prompt Care applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

28.    Upon information and belief, at all relevant times, Prompt Care has had an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

30.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

31.    This Court also has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

32.    There are over 100 members in the proposed class.

33.    Defendant is subject to personal jurisdiction in New York.

34.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

35.    Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of herself and all similarly situated persons who work or have worked as Hourly Workers for Prompt Care nationwide who elect to opt-in to this action (the "FLSA Collective").

36.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective for their overtime hours worked.

37.    Consistent with Defendant's policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay, including stipends, for all hours worked beyond 40 per workweek.

38.    All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

39.    As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the correct overtime wages for all hours worked in excess of 40 hours per workweek.

40.    An employer "willfully violates the FLSA when it either new or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

41.    According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *See* 995 F.3d 315, 323 (2d Cir. 2021)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See Id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

42. Defendant knew or should have known that their wage and hour practices with regards to Hourly Workers violated the FLSA's overtime requirements. In this regard, district courts around the country, including district courts throughout New York, have repeatedly ruled that workers must be paid for all hours worked at 1.5 times their regular rate of pay.

43. To support their operations, Defendant either employs or contracts multiple attorneys with the specific job duty of ensuring compliance with federal and state labor laws, or Defendant recklessly disregards these laws.

44. Accordingly, it is clear that Defendant recklessly disregarded the law, because their substantial operation size does not allow for mere ignorance of their flagrant violation of the FLSA.

45. As such, Defendant's failure to pay overtime constitutes a willful violation of the FLSA.

## NEW YORK CLASS ACTION ALLEGATIONS

46. Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as Hourly Workers for
> Prompt Care in New York between December 17, 2016[1] and

---

[1] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

the date of final judgment in this matter (the "New York Class").

47.     The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

48.     There are more than fifty members of the New York Class.

49.     Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

50.     Plaintiff and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

51.     Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

52.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

53.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

54.     Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

(a)     Whether Defendant correctly compensated Plaintiff and the New York Class for hours worked up to 40 per workweek;

(b)     Whether Defendant correctly compensated Plaintiff and the New York Class for hours worked in excess of 40 per workweek;

(c)     Whether Defendant correctly compensated Plaintiff and the New York Class on a timely basis;

(d)     Whether Defendant failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

55.     Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff, individually, as follows:

**Linda Schiller-Egles**

56.     Schiller-Egles has been employed at the Prompt Care in New York as respiratory therapist since approximately September 2019.

57.     During her employment, Schiller-Egles frequently worked over 40 hours per week. Defendant regularly required Schiller-Egles to be "on call". Defendant paid an "on call" stipend of $25/day Monday through Friday, $50/day on the weekends, and $100/day on holidays. The stipend was to compensate employees for agreeing to be "on call", but not for time actually worked while "on call."

58.     As such, Defendant failed to compensate Schiller-Egles for her time worked while "on call" at her agreed upon rate of pay, for hours up to and including 40 per workweek, and at the proper

overtime rate, for hours over 40 per workweek. Specifically, the stipend didn't cover Plaintiff's hours worked at her regular rate of pay for hours up to and including 40 per workweek, or at her overtime rate of pay for hours over 40 per work week.

59.    Per Defendant's policy, Defendant agreed to pay Plaintiff and Hourly Workers the stipend _in addition to_ paying Plaintiff and Hourly Workers for all hours worked while on call (including providing assistance by phone). *See* **Exhibit A**, Defendant's Policy.

60.    For example, for the pay period January 23, 2023 through February 5, 2023, Schiller-Egles recorded 254 minutes (4 hours and 14 minutes) of time worked while "on call." All of this recorded time occurred in week 2 of the bi-weekly pay period, between January 30, 2023 and February 5, 2023. For this time, Plaintiff was paid $225 in stipends for agreed to be "on call" for five (5) weekdays ($25 each) and two (2) weekend days ($50 each). However, for the hours Plaintiff worked while "on call", Plaintiff should have been paid an additional $349.65 (4.23333 hours * $82.66 overtime rate that pay period = $349.93). *See* **Exhibit B**, Paystub 1; **Exhibit C**, Recorded Hours Worked "On Call."

61.    During Schiller-Egles' employment, over twenty-five percent of Schiller-Egles' duties were physical tasks, including but not limited to: lifting and carrying equipment; pulling, pushing, and reaching; and standing for long periods of time.  Defendant assessed the physical demands of Plaintiff's job as follows:

**PHYSICAL DEMANDS**

**POSITION**

| ACTIVITY | % OF TIME | COMMENTS |
|---|---|---|
| Standing | 50 | |
| Walking | 20 | |
| Sitting | 20 | |
| Stooping/Bending | 10 | |

**PHYSICAL ACTIVITY**

| ACTIVITY | NOT PRESENT | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|---|
| Lifting | | | x | |
| Carrying | | | x | |
| Pushing | | X | | |
| Pulling | | X | | |

CONTROLS USED: [X] HAND/ARM  [ ] FOOT

STRENGTH LEVEL: [ ] SEDENTARY  [ ] LIGHT  [X] MEDIUM  [ ] HEAVY  [ ] VERY HEAVY

N = NOT APPLICABLE    O = OCCASIONALLY    F = FREQUENTLY    C = CONSTANTLY

**INDICATE FREQUENCY**

| ACTIVITY | FREQ | ACTIVITY | FREQ |
|---|---|---|---|
| Climbing | O | Fine Hand Manipulation | C |
| Balancing | O | Handing | C |
| Stooping | O | Feeling | C |
| Kneeling | O | Talking | C |
| Crouching | C | Hearing | C |
| Crawling | O | Tasting/Smelling | O |
| Reaching | C | Near/Acuity | O |
| Standing | C | Far Acuity | O |
| Walking | C | Depth Perception | C |
| Pushing | O | Color Vision | C |
| Pulling | O | Field Vision | O |
| Lifting | C | | |

62.     Despite regularly spending more than twenty-five percent of her shift performing these physical tasks, Schiller-Egles has been compensated by Defendant on a bi-weekly basis.

63.     As a result of Defendant's untimely wage payments, Schiller-Egles was underpaid for the first seven days of each bi-weekly pay period, and thus Defendant paid Schiller-Egles on an untimely basis.

64.     For example, for the period beginning on January 23, 2023 through February 5, 2023, Schiller-Egles was paid her lawfully earned wages on February 10, 2023. *See* **Exhibit B**.

65.     In this regard, Defendant failed to pay Schiller-Egles her wages earned from January 23, 2023 to January 29, 2023 by February 5, 2023 as required by NYLL § 191(1)(a).

66.     As a result of Defendant's untimely wage payments, Schiller-Egles was underpaid for the period of January 23, 2023 to January 29, 2023, and for every corresponding period where

Defendant paid Schiller-Egles on an untimely basis.

67.    Moreover, Schiller-Egles was denied the time-value of her money by Defendant's underpayments. Schiller-Egles was unable to invest, save, or purchase utilizing the wages she earned and was owed by February 5, 2023, respectively, and all other similarly underpaid workweeks.

68.    Schiller-Egles was similarly underpaid for every workweek that she was paid her lawfully earned wages after more than seven days within the time she completed her work.

69.    Throughout her employment, Defendant failed to provide Schiller-Egles with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provide to Schiller-Egles by Defendant failed to the correct number of hours Plaintiff worked.

70.    Defendant's failure to provide Schiller-Egles with accurate wage statements misinformed Plaintiff about the correct number of hours she worked, and thus the wages she was entitled to receive, and allowed to Defendant to continue their unlawful pay scheme.

71.    Schiller-Egles attempted to resolve some of the aforementioned issues herself with Defendant for approximately 8 months.

72.    Thereafter, counsel for Schiller-Egles reached out to Defendant via a demand letter on June 22, 2023 stating Plaintiff's claims against Defendant on behalf of herself and similarly situated hourly workers. *See* **Exhibit D**, Plaintiff's Demand Letter.

73.    On July 7, 2023, Defendant's Counsel responded to the letter via e-mail that they were "looking into the matter" and would let Plaintiff's counsel know when he was "up to speed [. . .] so we [could] schedule a time to further discuss. There no further communication from Defendant's Counsel between July 7, 2023, and July 31, 2023.

74.    Upon information and belief, on July 31, 2023, Defendant sent a letter to all current New York Hourly Workers, except Plaintiff, offering them money that purportedly compensates them for unpaid overtime, plus 9% interest, plus $1,000, and required that they sign, within 14 days, a release of all New York Labor Law claims in order to receive the money. *See* **Exhibit E**.

75.    On July 31, 2023, Defendant held a meeting with all current New York Hourly Workers in which Defendant discussed the offer to current employees. In the meeting, a representative for the company stated: "we are now offering to pay you any amount we owe you for the time you were troubleshooting for the past few years." He goes on to state that Defendant was also providing an "additional amount as a way to thank you for your service and for any inconvenience that we caused." He then states there is a "short agreement" that employees "will need to sign in order to receive this payment."

76.    Furthermore, upon information and belief, on July 31, 2023, Defendant send a similar letter to former New Your Hourly Workers, offering them money that purportedly compensates them for unpaid overtime, plus 9% interest, plus $1,000. *See* **Exhibit F**, Former Employee Letter. Defendant enclosed a check in these letters, which states that by cashing or depositing the check, the former employee would release any NYLL claims. As this communication was not supervised by a court, it is preposterous and self-serving for Defendant to state that by cashing or depositing the check the release would be valid.

77.    Notably, in both the current and former employee letters, Defendant states that Plaintiff's "attorney has claimed that [Respiratory Therapists] should be paid weekly (instead of bi-weekly) under a NYLL provision that dates back to the 19th century. The weekly pay requirement applies to 'manual workers', which are defined as a 'mechanic, workingman, or laborer.' Respiratory Therapy is a skilled profession that requires licensure, board examination,

and continuing education, which we do not see as being equivalent to a mechanic, workingman, or laborer.' PromptCare believes that the allegations are meritless and will vigorously defend itself." *See* **Exhibits E-F**.

78.    Furthermore, the letters do not include any mention of liquidated damages. *Id*. However, "double damages are the norm and single damages the exception" *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

79.    Additionally, Defendant's letter conveniently provided no description or discussion of how it arrived that their computation of alleged back pay. *See* **Exhibits E-F**.

80.    This meeting and correspondence are blatantly misleading and improper. Defendant is aware that Plaintiff is seeking to represent a class of workers.  The statement regarding Defendant believing that the claims are meritless and that Defendant will vigorously defend itself are meant to coerce potential class members into believing that the settlement offer is generous and comprehensive, when it is anything but.  Interestingly, even though Defendant allegedly believes only one of the claims have merit, they are insisting on a full and comprehensive NYLL release.  Defendant should not be permitted to destroy and circumvent class actions and FRCP 23 via this underhanded tactic.  Moreover, Defendant is certainly aware that FLSA claims cannot be released without Court supervision. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015).  The communication is clearly an attempted run-around of Cheeks which may deem the NYLL release invalid as well.  This communication constitutes improper contact with putative class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

81.    Specifically, Defendant's misleading and coercive communications enumerated above violate *Gulf Oil* because the statements mislead unrepresented employees about the state of

the case law, and the extent of their NYLL release, and their potential claims against Defendant. Furthermore, Defendant solely and unilaterally communicated with these putative class members in an effort to narrow the scope of the class and to preclude former and current employees from participating in this litigation. Additionally, the communication fails to disclose that putative class/collective members may be precluded from participating in this litigation if they sign the release.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

82.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

83.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendant and protect Plaintiff and the members of FLSA Collective.

84.     Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

85.     Defendant failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, including stipends for on-call time, for all hours worked in excess of 40 per workweek.

86.     As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**New York Labor Law – Agreed Upon Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

87.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

88.    Pursuant to NYLL, Article 6 § 191(1)(d), Defendant has been required to pay Plaintiff and the New York Class the wages they have earned in accordance with the agreed terms of their employment.

89.    Defendant failed to pay Plaintiff and the New York Class for work performed while "on call", as agreed upon, at their agreed upon rate of pay.

90.    As a result of the common policies described above Defendant has violated the agreed upon wage provisions of the NYLL with respect to Plaintiff and the New York Class by: failing to compensate Plaintiff and the New York Class for all hours worked up to and including 40 at their agreed upon rate of pay.

91.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their agreed wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

92.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff and the New York Class.

94.    Defendant failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department

of Labor Regulations – at a rate of 1.5 times their regular rate of pay, for all hours worked beyond 40 per workweek.

95.     In this regard, Defendant required Plaintiff and the New York Class to perform work without compensation. Specifically, Defendant paid Plaintiff and the New York Class a stipend for "on call" time, however, during this time, Plaintiff and the New York Class were regularly performing work for which they were not compensated for at their overtime rate of pay.

96.     Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Wages
### (Brought on behalf of Plaintiff and the New York Class)

97.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98.     The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiff and the New York Class.

99.     Defendant failed to pay Plaintiff and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

100.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### FIFTH CAUSE OF ACTION
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the New York Class)**

101. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102. Defendant failed to supply Plaintiff and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

103. Due to Defendant's violations of NYLL § 195(3), Plaintiff and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Hourly Workers in the United States who are presently, or have at any time during the three years immediately preceding the filing of this suit, up

through and including the date of this Court's issuance of court-supervised notice, worked for Prompt Care. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiff as representative of the New York Class and counsel of record as Class Counsel;

E.    Unpaid agreed upon wages, overtime wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.    Liquidated damages permitted by law pursuant to the NYLL;

G.    Statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Plaintiff and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

H.    Prejudgment and post-judgment interest;

I.    Reasonable attorneys' fees and costs of the action; and

J.    Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
        August 2, 2023

Respectfully submitted,

 /s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

      1.      I consent to be a party plaintiff in a lawsuit against PromptCare Companies and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

      2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Linda Schiller Egles (May 1, 2023 11:41 EDT)

Signature

# Linda Schiller Egles

Full Legal Name (Print)