UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LINDA SCHILLER-EGLES, *individually and on behalf of all others similarly situated,*

*Plaintiff,*

v.

THE PROMPTCARE COMPANIES, INC., *d/b/a* PROMPT CARE COMPANIES INC.,

*Defendant.*

No. 23-CV-6790 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Brian Scott Schaffer, Esq.
Armando Aguirre Ortiz, Esq.
Dana Marie Cimera, Esq.
Fitapelli & Schaffer LLP
New York, NY
*Counsel for Plaintiff*

Seth Diamant Kaufman, Esq.
Amanda Blair, Esq.
Fisher & Phillips LLP
New York. NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Linda Schiller-Egles ("Plaintiff"), individually and on behalf of all others similarly

situated, brings this Action against The PromptCare Companies, Inc. ("Defendant"), alleging

failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 et seq., and of the New York Labor Law ("NYLL") §§ 191, 195(3).  (*See generally*

Compl. (Dkt. No. 1).)  Before the Court is Defendant's Motion to Dismiss, (Not. of Mot. to

Dismiss (Dkt. No. 44)), and Plaintiff's Motion for Preliminary FLSA Certification, (Not. of Mot.

for Cert. (Dkt. No. 61)).  For the reasons set forth below, the Defendant's Motion is granted in part and denied in part and the Plaintiff's Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the purpose of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff has been employed by Defendant as a respiratory therapist in New York since approximately September 2019.  (Compl. ¶ 56.)  Defendant is headquartered in New Jersey and provides respiratory products and infusion therapy services in 40 locations across the country. (*Id.* ¶¶ 2–3.)  During her employment, Plaintiff frequently worked over 40 hours per week and was regularly required to be "on-call," for which Defendant would pay employees a stipend of $25/day for weekdays, $50/day for weekend days, and $100/day for holidays.  (*Id.* ¶ 57.)  Per Defendant's policy, the stipend is meant to compensate employees for agreeing to be on-call and is paid in addition to hours worked while on-call.  (*Id.* ¶ 59.)  Plaintiff alleges that she was not paid for work performed while on-call.  (*Id.* ¶¶ 58, 89.)

Plaintiff also alleges that she is a "manual worker" within the meaning of NYLL § 190(4), such that Defendant is required per NYLL § 191 to pay Plaintiff and similarly situated employees on a weekly basis, and no later than seven days after the end of the workweek in which the wages are earned.  (*Id.* ¶¶ 61–63.)  Plaintiff is compensated by Defendant on a bi-weekly basis and alleges that Defendant paid her on an untimely basis and deprived her of the time-value of her wages.  (*Id.* ¶¶ 66–67.)  Lastly, Plaintiff alleges that Defendant failed to

provide accurate wage statements that accounted for the actual number of hours that Plaintiff had worked for any given pay period. (*Id.* ¶ 69.)

Plaintiff brings her FLSA claim, the First Cause of Action, on behalf of herself and a putative FLSA Collective that includes similarly situated persons who are or have been hourly workers for Defendant nationwide and who elect to opt-in to this Action. (*Id.* ¶ 35.)  Plaintiff brings her Second, Third, Fourth, and Fifth Causes of Action under the New York Labor Law on behalf of herself and a putative class consisting of individuals who were hourly employees of Defendant in New York between December 17, 2016, and the date of final judgment in this Action. (*Id.* ¶ 46.)

B.  Procedural Background

Plaintiff initiated this Action on August 2, 2023. (*See* Compl.)  From August 3 to 9, 2023, the Parties exchanged letters on whether Defendant had improperly communicated with putative class and collective members and whether any remedies were appropriate. (*See* Dkt. Nos. 4, 8, 10, 11.)  On September 15, 2023, the Court held oral argument on the issue and ordered that Defendant shall not communicate with potential class members about this Action without prior approval and directed the Parties to agree on language for a corrective notice. (Dkt. No. 18.)  The corrective notice language was approved on September 26, 2023. (Dkt. No. 24.)  In October 2023, three individuals opted-in to be a party plaintiff pursuant to FLSA. (*See* Dkt. No. 25 (Joanne Utzman); Dkt. No. 26 (Krista Hicks); Dkt. No. 27 (Cesar Rosario).)  After multiple extensions, Defendant filed a pre-motion letter pursuant to the Court's Individual Rules on March 30, 2024. (Dkt. No. 37.)  On April 12, 2024, Plaintiff responded. (Dkt. No. 40.)  On May 9, 2024, the Court held a pre-motion conference and set a briefing schedule. (Dkt. Nos. 41, 43.)

On June 10, 2024, Defendant filed its Motion to Dismiss. (*See* Not. of Mot. to Dismiss; Mem. of Law in Supp. of Def's Mot. ("Def's MTD Mem.") (Dkt. No. 46); Decl. of Seth Kaufman ("Kaufman Decl.") (Dkt. No. 45).) On July 19, 2024, Plaintiff responded. (*See* Mem. of Law in Opp. to Def's Mot. ("Pl's MTD Opp.") (Dkt. No. 51).) On August 7, 2024, Defendant replied. (*See* Reply Mem. of Law in Supp. of Def's Mot. ("Def's MTD Reply") (Dkt. No. 54); Second Decl. of Seth Kaufman ("Second Kaufman Decl.") (Dkt. No. 55).)

On October 2, 2024, Plaintiff filed its Motion for Preliminary FLSA Certification. (*See* Not. of Mot. for Cert.; Mem. of Law in Supp. of Pl's Mot. ("Pl's Cert. Mem.") (Dkt. No. 63); Decl. of Brian S. Schaffer ("Schaffer Decl.") (Dkt. No. 62).) On October 16, 2024, Defendant filed its Opposition. (*See* Mem. of Law in Opp. to Pl's Mot. ("Def's Cert. Opp.") (Dkt. No. 66); Decl. of Lia Schork ("Schork Decl.") (Dkt. No. 64); Third Decl. of Seth D. Kaufman ("Third Kaufman Decl.") (Dkt. No. 65).) On October 23, 2024, Plaintiff replied. (*See* Reply Mem. of Law in Supp. of Pl's Mot. ("Pl's Cert. Reply") (Dkt. No. 67).)

## II.  Motion to Dismiss

### A.  Standard of Review

#### 1.  Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court has jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same). However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration adopted)

(italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)). "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *5 (S.D.N.Y. Sept. 23, 2024) (same). A plaintiff may "make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted); *see also Mayor v. Sankareh*, No. 21-CV-10831, 2023 WL 2393919, at *2 (S.D.N.Y. Feb. 7, 2023) (same), *report and recommendation adopted*, 2023 WL 2207602 (S.D.N.Y. Feb. 24, 2023).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-CV-420,

2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))).  "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a defendant. *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

### 2.  Rule 12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

　　　"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.

Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v.

Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

　　　3.  Rule 12(b)(1)

　　　"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by

a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be

7

dismissed." *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211 F.3d at 700–01). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

The Second Circuit has explained that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id.* at 56 (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id.* (alterations adopted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the

pleadings, a plaintiff must either come forward with controverting evidence or rest on the

pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co.*,

872 F.3d 114, 119 (2d Cir. 2017).  "If the extrinsic evidence presented by the defendant is

material and controverted, the . . . [C]ourt will need to make findings of fact in aid of its decision

as to standing."  *Carter*, 822 F.3d at 57.

B.  Analysis

    1.  Personal Jurisdiction Over FLSA Collective Members

        Defendant moves to dismiss the First Cause of Action, arguing that the Court lacks

personal jurisdiction over the claims of putative FLSA Collective members that arose outside of

New York.  (*See* Def's MTD Mem. 3–11.)  Plaintiff argues that the Court does have jurisdiction

over the entire FLSA Collective, including the claims of non-New York resident opt-in plaintiffs.

(*See* Pl's MTD Opp. 4–19.)

        The FLSA "seeks to prohibit 'labor conditions detrimental to the maintenance of the

minimum standard of living necessary for health, efficiency, and general well-being of

workers.'"  *Kasten v. Saint-Govain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting

29 U.S.C. § 202(a)).  An employee whose rights under the FLSA were violated may file an

action in any federal or state court of competent jurisdiction "for and in behalf of himself or

themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Unless a party

consents to personal jurisdiction, a court must secure either general or specific jurisdiction.  *See*

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138–39 (2023).  "General jurisdiction over a

defendant permits a court to adjudicate any claim against it but exists only where a defendant is

'essentially at home' because its contacts with a given state are 'continuous and systematic,' as

when a business is headquartered or incorporated in that state."  *Vanegas v. Signet Builders, Inc.*,

113 F.4th 718, 722 (7th Cir. 2024) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In contrast, "specific jurisdiction lets a court decide only claims relating to a 'defendant's contacts with the forum.'" *Id.* at 722–23 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Personal jurisdiction has three requirements:  "First, the plaintiff's service of process upon the defendant must have been procedurally proper," *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); "[s]econd, there must be a statutory basis for personal jurisdiction that renders such service of process effective," *id.*; and "[t]hird, the exercise of personal jurisdiction must comport with constitutional due process principles," *id.* at 60.  With respect to the third requirement, "[i]n a federal question case, the manner in which district courts assess whether the exercise of personal jurisdiction comports with constitutional due process varies depending on the asserted statutory basis." *Schentag v. Nebgen*, No. 17-CV-8734, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018).  "[I]f the federal statute does not specifically provide for national service of process" and "a defendant resides outside the forum state," then "a federal court applies the forum state's personal jurisdiction rules." *Giana v. Shein Distrib. Corp.*, No. 24-CV-2599, 2024 WL 4362749, at *2 (S.D.N.Y. Oct. 1, 2024) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)); *see also* Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:  (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located" or "(C) when authorized by a federal statute.").  The FLSA does not provide for nationwide service of process. *See Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 495 (S.D.N.Y. 2021) (citing *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. Oct. 25, 2019)).  Under Rule 4(k)(1)(A), "federal district courts may assert

personal jurisdiction on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Kimble v. Opteon Appraisal, Inc.*, 712 F. Supp. 3d 379, 387 (W.D.N.Y. 2024) (alterations adopted) (quotation marks) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A))). "Therefore, to determine personal jurisdiction over a non-domiciliary in an FLSA action, the Court first applies the forum state's long-arm statute." *Pettenato*, 425 F. Supp. 3d at 273 (alteration adopted) (quotation marks omitted) (quoting *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161 168 (2d Cir. 2015)).

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). "To determine whether a defendant is subject to jurisdiction under 302(a)(1), the court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Petttenato*, 425 F. Supp. 3d at 273–74 (quoting *Biro v. Nast*, No. 11-CV-4442, 2012 WL 3262770, at *9 (S.D.N.Y. Aug. 10, 2012) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007))). Plaintiff "do[es] not contend—and the record does not support—that [Defendant] would be subject to specific jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1) with respect to the claims of . . . out-of-state plaintiffs had those plaintiffs brought suit individually." *Pettenato*, 425 F. Supp. 3d at 274 (citing *Indelicato v. Liberty Transp., Inc.*, No. 18-CV-253V, 2018 WL 3934074, at *7–8 (W.D.N.Y. Aug. 16, 2018), (recommending dismissal of FLSA claims brought against out-of-state trucking company for lack of personal jurisdiction, even though plaintiff driver "might have signed his agreements"

when he was in New York and some of his routes took him through New York), *report and recommendation adopted*, 2019 WL 1506931 (W.D.N.Y. Apr. 6, 2019).

The Parties dispute the applicability the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017). (*See* Def's MTD Mem. 3–10; Pl's MTD Opp. 4–18.) *Bristol-Myers* concerned "whether due process permitted a California state court to exercise specific personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant as part of a mass tort action." *Bethel*, 2022 WL 3594575, at *10 (citing *Bristol-Myers*, 582 U.S. at 258–61).

> The [Supreme] Court began its analysis by observing that "in order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection," the [Supreme] Court explained, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264. Applying these principles, the [Supreme] Court found that California could not exercise specific personal jurisdiction over claims asserted by non-residents who did "not claim to have suffered harm in that State." *Id.* at 265. The [Supreme] Court concluded by observing that its decision would "not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over the defendant" and that residents of particular states could "probably sue together in their home States." *Id.* at 268. Lastly, the [Supreme] Court noted that its decision concerned only "the due process limits on the exercise of specific jurisdiction by a State" and left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 268–69.

*Id.* at *10 (alterations adopted). Federal courts disagree on the applicability of *Bristol-Myers* to FLSA collective actions, *see id.*; *Pettenato*, 425 F. Supp. 3d at 275 (collecting cases); *see also* Adam Drake, *The FLSA's* Bristol-Myers Squibb *Problem*, 89 FORDHAM L REV. 1511, 1526 (2021) (observing "a nearly even split between the thirty-seven district courts that have addressed the issue" as of the note's publication), but there is a growing consensus, as the Third, Sixth, Seventh, and Eighth Circuits have held that *Bristol-Myers* precludes certification of a

nationwide FLSA collective, *see Vanegas*, 113 F.4th at 726; *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 387–88 (3d Cir. 2022); *Canaday v. Anthem Cos.*, 9 F.4th 392, 397 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 864–65 (8th Cir. 2021). The First Circuit is an outlier, holding that *Bristol-Myers* does not preclude certification of a nationwide FLSA collective. *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022).

The Court agrees with the majority of district and circuit courts and finds that *Bristol-Myers* applies to FLSA collective actions. This decision is supported by FLSA collective actions' similarity to mass torts, as opposed to Rule 23 class actions. *See Kimble*, 712 F. Supp. 3d at 388 (finding that FLSA collectives are similar to mass torts because each opt-in plaintiff remains a party even after their "joinder"); *Bethel*, 2022 WL 3594575, at *11 (finding that plaintiffs in collective and mass tort actions are similar because they capitalize on efficiencies of scale, "but without necessarily permitting a specific, named representative to control the litigation"); *Pettenato*, 425 F. Supp. 3d at 279 (noting that opt-in plaintiffs and mass tort plaintiffs are similar because they are subject to party discovery, whereas Rule 23 class members generally are not). In an FLSA collective action, "each FLSA plaintiff has party status and may pursue their own individual claim," *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-8410, 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021), as opposed to a Rule 23 class, in which "a defendant litigates against only the class representative," *Kimble*, 712 F. Supp. 3d at 386 (quoting *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021)). Similarly, in FLSA collective actions, "opt-in plaintiffs are deemed to be parties to the action as soon as they file consent forms," which means that they "are subject to party discovery, while Rule 23 class members are generally not." *Bethel*, 2022 WL 3594575, at *11 (quotation marks and citations omitted).

Plaintiff raises a number of arguments to support a different reading of *Bristol-Myers*, which the Court addresses in turn.  None is persuasive.  First, Plaintiff's argument that FLSA collective actions are "representative," (Pl's MTD Opp. 16–18), does not overcome the common understanding in the Second Circuit that a FLSA collective action is "a collective of *individual* plaintiffs with *individual* cases," *Zambrano*, 2021 WL 4460632, at *8 (emphasis in original) (quoting *Pettenato*, 425 F. Supp. 3d at 279, and collecting cases); *see also Vasquez v. A+ Staffing LLC*, No. 22-CV-2306, 2024 WL 3966246, at *22 (E.D.N.Y. Aug. 27, 2024) (same); *Bethel*, 2022 WL 3594575, at *11 (same).

Second, Plaintiff argues that *Bristol-Myers* applies only in state court.  (*See* Pl's MTD Opp. 7–13.)  It is true that the Supreme Court did leave "open . . . whether the Fifth Amendment imposes the same restrictions" on specific jurisdiction.  *Bristol-Myers*, 582 U.S. at 269.  But this does not compel Plaintiff's reading that "[*Bristol-Myers*'] holding was confined to a *state court's*—not a federal court['s]—authority to exercise personal jurisdiction under the Fourteenth Amendment."  (Pl's Opp. 7 (emphasis in original).)  The issue here is whether the due process analyses under the Fifth and Fourteenth Amendment differ, and whether those different analyses would compel application of *Bristol-Myers*.  The Second Circuit has directly addressed the former question and noted that it and other circuits have held there is a "congruence" between the Fifth and Fourteenth Amendment due process principles.  *See Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 104 (2d Cir. 2023); *see also id.* at 104 n.17 (collecting cases where the Second Circuit repeatedly invoked the Fourteenth Amendment due process standard where the Fifth Amendment standard applies, and vice versa).  Accordingly, the Second Circuit has held that the due process analyses under the Fifth and Fourteenth Amendments parallel one another in civil cases.  *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016) ("The due

process analysis for purposes of the court's in personam jurisdiction is basically the same under both the Fifth and Fourteenth Amendments." (italics omitted) (alterations adopted)).  As to the application of *Bristol-Myers*, the "vast majority of district courts to have addressed [that] question have concluded that *Bristol-Myers* does govern actions in federal courts."  *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 541 (D. Conn. 2020) (collecting cases).  In a case dealing with this issue, the Seventh Circuit noted that, "because federal courts ordinarily secure their jurisdiction through [Rule] 4(k)(1)(A)[,] . . . [t]he Fourteenth Amendment, not the Fifth, does all the jurisdictional work in this case," *Vanegas*, 113 F.4th at 726.  To argue otherwise conflicts with the "common (if, perhaps unreflective) practice of federal courts."  *Bethel*, 2022 WL 3594575, at *9 n.10 (agreeing with the dissent in *Waters* that *Bristol-Myers* does apply to FLSA collectives)).  In short, Plaintiff cites no cases, outside of the First Circuit's decision in *Waters*, for the proposition that a Fourteenth Amendment analysis *cannot* apply to or inform a Fifth Amendment analysis.  The Second Circuit has addressed this question and held that such due process analyses are congruent to the point of interchangeability.  Accordingly, the Court does not agree that *Bristol-Myers* applies only in state court.

Plaintiff also argues that Rule 4 applies only insofar as it governs service on Defendant by Plaintiff, and that once that is out of the way, opt-in plaintiffs need only comply with the Fifth Amendment.  (*See* Pl's MTD Opp. 7, 11–13.)  "That is not how it works."  *Vanegas*, 113 F.4th at 729 (quoting *Canaday*, 9 F.4th at 400)).  The Court agrees with the Seventh Circuit that Plaintiff's theory is "hard to reconcile with *Bristol-Myers*, as it would create another loose and spurious form of general jurisdiction."  *Id.* (quotation marks and citations omitted).  In other words, "when the [federal district] court asserts its jurisdiction through Rule 4(k)(1)(A) service, all [the district court] gets is what a state court would have."  *Id.*; *see also Fischer*, 42 F.4th at

383 (holding that "Rule 4(k)(1)(A) does not authorize jurisdiction broader than what would be permissible for a state").

Finally, Plaintiff argues that *Bristol-Myers* is inapplicable because its application would contravene Congress' intent in passing the FLSA and including an "opt-in" requirement. (*See* Pl's MTD Opp. 14–16.) "To be sure, FLSA is a broad remedial statute. But the Court's ability to exercise personal jurisdiction does not depend on the purposes of a particular statute, but rather on well-settled principles of due process. Indeed, a court may not exercise jurisdiction in a manner repugnant to the Constitution." *Bethel*, 2022 WL 3594575, at *12; *see also Kimble*, 712 F. Supp. 3d at 388–89 (noting that courts must "take the statute as [they] find it" (quoting *Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.))). Contrary to Plaintiff's assertion, applying *Bristol-Myers* does not "splinter" the FLSA collective action. (*See* Pl's MTD Opp. 18.) Rather, it was Plaintiff's decision to litigate in New York, as opposed to New Jersey, that has "splinter[ed]" the Action. *Vanegas*, 113 F.4th at 730. "[T]he choice to concentrate the claims into one suit or disperse them across the nation rests always in plaintiffs' hands," and so "FLSA claims will splinter into different suits if (and only if) the plaintiffs so choose." *Id.*

As discussed above, "[b]ecause the FLSA does not provide for nationwide service of process, and because [Defendant] has not consented to this Court's jurisdiction over it with respect to the claims of out-of-state plaintiffs, the Court looks to New York's [long-arm statute] and the Due Process clause to determine whether there is a sufficient nexus between those employees' claims . . . and [Defendant's] activity in New York." *See Pettenato*, 425 F. Supp. 3d at 278. It is undisputed that Defendant transacts business in New York. (*See, e.g.*, Def's Mem. 10 (noting that some employees might have worked in New York such that they "would admittedly have sufficient connection to New York to provide the Court with jurisdiction").)

Plaintiff's FLSA claim arises from her employment in New York.  (*See* Compl. ¶ 56.)  Of the three opt-in plaintiffs, Joanne Utzman ("Utzman"), Krista Hicks ("Hicks"), and Cesar Rosario ("Rosario"), only Utzman and Hicks submitted declarations.  (*See* Decl. of Joanne Utzman ("Utzman Decl.") (Dkt. No. 62-4); Decl. of Krista Hicks ("Hicks Decl.") (Dkt. No. 62-5).)  Utzman avers that she worked for Defendant in New York.  (Utzman Decl. ¶ 2.)  As both Plaintiff and Utzman were employed in New York, their claims arise from Defendant's business transactions in New York.  Hicks avers that she worked for Defendant in both New Jersey and New York.  (Hicks Decl. ¶ 2.)  Because Hicks' work for Defendant in New Jersey does not arise from Defendant's business transactions in New York, the Court lacks personal jurisdiction over Hicks to the extent her claim arises from her performing work in New Jersey.  *Cf. Goldowsky v. Exeter Fin. Corp.*, No. 15-CV-632, 2021 WL 695063, at *4 (W.D.N.Y. Feb. 23, 2021) (holding that the court did not have personal jurisdiction over out-of-state opt-in plaintiffs' claims because they failed to "demonstrate[] any nexus between their respective employment with [defendant] and their related" FLSA claims "within New York State"); *see also Suazo v. Bluemercury, Inc.*, No. 22-CV-6307, 2023 WL 2959997, at *5 (N.D. Cal. Apr. 14, 2023) (dismissing out-of-state opt-in plaintiffs for lack of personal jurisdiction).

Therefore, the Court concludes it lacks personal jurisdiction over out-of-state plaintiffs who did not work for Defendant in New York during the period in which Defendant was allegedly violating the FLSA.

### 2.  Failure to State Plaintiff's Fourth Cause of Action

Defendant moves to dismiss the Fourth Cause of Action for failure to state a claim, arguing that NYLL § 191 does not provide Plaintiff with an express or implied right of action.  (*See* Def's MTD Mem. 11–21.)  The Court disagrees.

As a general matter, "[w]hen deciding a question of state law," federal courts "look to the state's decisional law, as well as to its constitution and statutes." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (internal quotation marks and citation omitted). Absent a clear directive from a state's highest court, a federal court must "predict how the state's highest court would resolve the uncertainty or ambiguity." *Id.* at 499 (internal quotation marks and citation omitted). In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010); *see also Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 346 (S.D.N.Y. 2024) (same).

Section 191(1)(a) provides in relevant part that "manual worker[s] shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" unless an employer is authorized to do otherwise by the State. NYLL § 191(1)(a)(i). Section 198 provides in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

*Id.* § 198(1-a).

In *Vega v. CM and Associates Construction Management, LLC*, the First Department held that Sections 191 and 198 provide workers with a private right of action for untimely payment of wages. 107 N.Y.S.3d 286, 288 (App. Div. 2019). Specifically, the *Vega* court held that "the plain language of [Section 198] indicates that individuals may bring suit for any 'wage claim' against an employer," and that "[t]he remedies provided by [S]ection 198(1-a) apply to 'violations of [A]rticle 6' [of the New York Labor Law], and [that] [S]ection 191(1)(a) is a part

18

of [A]rticle 6." *Id.* at 287–88 (internal citations omitted).  Moreover, the court held that "even if [Section] 198 does not expressly authorize a private action for violation of the requirements of [Section 191], a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute[,] and the creation of such a right would be consistent with the legislative scheme." *Id.* at 288–89 (citations omitted).

Defendant argues that the Court should not follow *Vega* and should instead adopt the Second Department's recent decision in *Grant v. Global Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (App. Div. 2024), which held that there is no express or implied private right of action for untimely payment of wages.  (*See* Def's MTD Mem. 15–21.)  In *Grant*, the court reasoned that neither the language nor the legislative history of Section 198 supported the plaintiff's contention that the statute expressly provides a private right of action to recover for a violation of Section 191(1)(a) where the employer pays wages pursuant to a regular biweekly pay schedule.  204 N.Y.S.3d at 122–23.

The New York Court of Appeals has yet to opine on this issue.[1]  As such, the Court must "predict how the [Court of Appeals] would resolve the uncertainty or ambiguity from the conflicting appellate decision." *Chen*, 954 F.3d at 499 (internal quotation marks and citation omitted).  Virtually all courts in the Second Circuit that have evaluated this exact issue, including this one, have concluded that the Court of Appeals would agree with *Vega*,[2] while one court has

---

[1] Neither the First nor the Second Department has granted leave to file an appeal in *Grant* or *Vega*, respectively.  *See generally Grant*, Dkt. 2021-03202; *Vega*, Dkt. 2018-1806.

[2] *See Phoenix v. Cushman & Wakefield U.S., Inc.*, No. 24-CV-965, 2025 WL 357793, at *5 (S.D.N.Y. Jan. 31, 2025); *Espinal v. Sephora USA, Inc.*, No. 22-CV-3034, 2024 WL

twice concluded otherwise.[3]  Defendant argues that the Court should reconsider its decision in *Gamboa*, in which the Court concluded that the Court of Appeals would agree with *Vega*.  (Def's MTD Mem. 15–21.)

Defendant argues that there is no private right of action, either express, (*see id.* 15–17), or implied, (*see id.* 17–19).  The Court sees no reason to repeat its analysis when it first confronted this issue.  In short, Section 198's text authorizes "employees to bring 'wage claims' for 'underpayments' violated of Article 6 of the NYLL," and the relevant legislative history "does in fact support a private right of action."  *Gamboa*, 719 F. Supp. 3d at 354–55 (internal quotation marks omitted) (alteration adopted).  As for an implied right of action, various courts have rejected *Grant*'s approach and held that the convincing and sound reasoning of *Vega* implies a private right to enforce Section 191 violations.  *See id.* at 355; *see also* supra n.2.  The Court sees nothing in Defendant's briefing and its cited support, or, with respect, in the reasoning of the

---

4241537, at *4 (S.D.N.Y. Sept. 19, 2024), *reconsideration denied*, 2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024); *Carrasquillo v. Westech Sec. & Investigation Inc.*, No. 23-CV-04931, 2024 WL 4227795, at *6 (S.D.N.Y. Sept. 17, 2024); *Charles et al. v. Aritzia*, No. 23-CV-9389, 2024 WL 4167502, at *5 (S.D.N.Y. Sept. 12, 2024); *Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-8286, 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024); *Covington v. Childtime Childcare, Inc.*, No. 23-CV-710, 2024 WL 2923702, at *4–5 (S.D.N.Y. Jun. 10, 2024); *Levy v. Endeavor Air Inc.*, No. 21-CV-4387, 2024 WL 1422322, at *1–2 (E.D.N.Y. Mar. 29, 2024); *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055, 2024 WL 1142316, at *6–7 (E.D.N.Y. Mar. 15, 2024); *Bazinett v. Pregis LLC*, 720 F. Supp. 3d 154, 161–63 (N.D.N.Y. 2024); *Gamboa v. Regeneron*, 719 F. Supp. 3d 349, 353–56 (S.D.N.Y. 2024); *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718, 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024), *report and recommendation adopted*, 2024 WL 1908607, at *1 (S.D.N.Y. May 1, 2024); *Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 347–50 (S.D.N.Y. 2024); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2024 WL 264448, at *5 (W.D.N.Y. Jan. 24, 2024); *Gutierrez v. Carter's Inc.*, No. 22-CV-3234, 2023 WL 7337184, at *3 (E.D.N.Y. Nov. 7, 2023); *Shugars v. Masonite Corp.*, No. 22-CV-1237, 2023 WL 7280902, at *6–7 (N.D.N.Y. Nov. 3, 2023).

[3] *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, No. 22-CV-6415, 2024 WL 4652251, at *1–2 (W.D.N.Y. Nov. 1, 2024), *appeal pending*, No. 24-3319 (2d. Cir. Dec. 5, 2024); *Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 187 (W.D.N.Y. 2024).

single outlier court in *Galante* and *Freeland*, that suggests the Court should reconsider its

opinion in *Gamboa*, which is in accordance with "the decisive weight of federal-court authority"

in the Second Circuit, *see Espinal*, 2024 WL 4751279, at *3–4 (collecting cases).  Accordingly,

the Court joins all other district courts in this Circuit, save one, and concludes that the Court of

Appeals is likely to apply *Vega*'s reason over *Grant*'s in resolving this issue.  *See Gamboa*, 719

F. Supp. 3d at 356.  The Court, therefore, denies Defendant's Motion on this claim.

### 3.  Standing to Pursue Plaintiff's Fifth Cause of Action

Defendant argues that the "majority view" in the Second Circuit is that "NYLL § 195(3)

does not automatically confer standing" and that each Plaintiff must, but here cannot, allege

concrete, downstream consequences to establish standing.  (Def's MTD Mem. 22–23 (citation

and quotation marks omitted).)  Plaintiff counters that Defendant's failure to provide accurate

wage statements "aid[ed] and abet[ted] Defendant's unlawful pay scheme" such that Plaintiff

was unable to understand if she was paid correctly.  (*See* Pl's MTD Opp. 21–25.)

The Second Circuit recently addressed this issue, holding that a plaintiff "must allege

actual injuries suffered as a result of the alleged wage notice and wage statement violations."

*Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (alteration adopted)

(quotation marks and internal citation omitted).  In particular, a plaintiff "must show some casual

connection between the lack of accurate notices and the downstream harm," *id.* at 308, and "must

support a plausible 'theory as to *how* he was injured by the defendants' failure to provide the

required documents,'" *id.* at 309 (emphasis in original) (alteration adopted) (quoting *Quieju v. La

Jugueria Inc.*, No. 23-CV-264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

"Following *Guthrie*, district courts are in agreement that a plaintiff has standing if he

plausibly alleges that, by failing to provide the required wage statements, the employer was 'able

to hide its violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of his unpaid wages.'" *Freeland*, 2024 WL 4652251, at *2 (quoting *Castillo v. Hollis Delicatessen Corp.*, No. 22-CV-5476, 2024 WL 4107258, at *1 n.1 (E.D.N.Y. Sept. 6, 2024)); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2024 WL 4275286, at *9 (S.D.N.Y. Sept. 24, 2024) (reading *Guthrie* as clarifying that "an informational harm can establish Article III standing for the purposes of a NYLL Section 195 claim so long as there are downstream consequences and plaintiffs link the general harms an employee *might* experience to any harms that plaintiffs *did*, in fact, experience" (alteration adopted) (emphasis in original) (quotation marks omitted and citation omitted)).

Here, Plaintiff alleges that Defendant's failure to provide "accurate wage statements misinformed Plaintiff about the correct number of hours she worked, and thus the wages she was entitled to receive, and allowed . . . Defendant to continue [its] unlawful pay schemes." (Compl. ¶ 70.) This is the kind of allegation that other courts have held sufficient to confer standing for purposes of a NYLL § 195 claim. *See, e.g., Roma v. David Carmili, Physician, P.C.*, --- F. Supp. 3d ----, 2024 WL 5152211, at *5–6 (E.D.N.Y. Dec. 18, 2024) (finding standing where the plaintiff alleged that her employer's "failure to provide her with wage statements prevented her from ascertaining the amounts she was supposed to be paid . . . ." (alteration adopted) (quotation marks omitted)); *Freeland*, 2024 WL 4652251, at *2 (finding standing where plaintiff alleged that his employer's failure to provide accurate wage statements "misinformed him about the correct overtime rate he was entitled to receive and prevented him from accurately determining what amounts he was being underpaid by, which allowed [d]efendant to continue their unlawful pay scheme" (alterations adopted) (quotation marks omitted)); *Charles v. Pinnacle Too, LLC*,

No. 22-CV-4232, 2024 WL 4491560, at *14 (S.D.N.Y. Oct. 15, 2024) (collecting cases) (report and recommendation).

Notably, *Guthrie* also provides that, "unless the plaintiff-employee can show that he or she would have undertaken [self-]advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under [Section] 195." 113 F.4th at 308. Here, Plaintiff does not exactly allege that, "*had* [she] received the proper disclosures, [she] would have advocated for [herself] and acted to rectify the situation sooner." *Reyes v. Crystal Window & Door Sys., Ltd.*, No. 23-CV-2578, 2024 WL 4028308, at *4 (E.D.N.Y. Sept. 3, 2024) (emphasis added) (internal quotation marks omitted). However, Plaintiff does allege that she engaged in self-advocacy by raising the Section 195 issue, among others, with Defendant prior to initiating this Action. (*See* Compl. ¶¶ 71–72.) Defendant argues that, because "Plaintiff was able to discern that she was allegedly underpaid" and engaged in self-advocacy, "it is inaccurate for her to now state that the faulty wage statements made it 'impossible' for her to determine she was underpaid." (Def's MTD Reply 12.) Here, Plaintiff has alleged how she did, in fact, advocate for proper wages. *Cf. Ruiz v. JHDHA, Inc.*, No. 22-CV-7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024) (finding that plaintiff's allegation is conclusory where her complaint "does not allege how [she] would have advocated for proper wages or how such advocacy might have led to increased pay"). It would be nonsensical to say that Plaintiff would have standing if she had alleged that she would have undertaken advocacy, but that she does not have standing because she actually engaged in that advocacy. Drawing inferences in Plaintiff's favor, her allegations are sufficient to establish standing for purposes of a Section 195 claim. *See Freeland*, 2024 WL 4652251, at *2.

4.  Stay

Defendant argues that the Court should stay this action pending the New York Court of

Appeal's review of *Grant*.  (*See* Def's MTD Mem. 24–25.)  Plaintiff argues that a stay is not

appropriate.  (*See* Pl's MTD Opp. 25–29.)

The Court has the "authority to stay proceedings pending disposition of another case that

could affect the outcome."  *Urena v. Sonder USA Inc.*, No. 22-CV-7736, 2024 WL 1333012, at

*1–2 (S.D.N.Y. Mar. 28, 2024) (quoting *Hoover v. HSBC Mortg. Corp. (USA)*, No. 13-CV-149,

2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014)); *see also Leslie v. Thomson Reuters Corp.*,

No. 22-CV-7936, 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023) (same); *Goldstein v. Time

Warner N.Y.C. Cable Grp.*, 3 F. Supp. 2d 423, 437–38 (S.D.N.Y. 1998) (same).  "A district

court's 'power to stay proceedings is incidental to the power inherent in every court to control

the disposition of the cases on its docket with economy of time and effort for itself, for counsel,

and for litigants.'" *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (quoting

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012)).  In deciding

whether to issue a stay, courts consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil
> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private
> interests of and burden on the defendants; (3) the interests of the courts; (4) the
> interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).  "[T]he first and

second factors are the 'most critical.'"  *Gabay v. Roadway Movers, Inc.*, No. 22-CV-6901, 2023

WL 3569351, at *1 (S.D.N.Y. May 19, 2023) (quoting *Meyer v. Kalanick*, 203 F. Supp. 3d 393,

395 (S.D.N.Y. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009))).

The first factor weighs in Plaintiff's favor—she has a substantial interest in proceeding

expeditiously, especially as she seeks alleged unpaid wages.  *See Davis v. Banana Republic,*

*LLC*, No. 21-CV-6160, 2023 WL 5979207, at *2 (E.D.N.Y. Aug. 26, 2023) (finding this factor weighs against a stay where plaintiff seeks unpaid wages). Defendant cites to *Urena* in arguing that the first factor weighs in favor of a stay, but *Urena* is inapposite because the plaintiff there was "already paid all of his outstanding wages" and sought only monetary damages. *Urena*, 2024 WL 1333012, at *2. Further, the Second Department has not given leave to file an appeal in *Grant*, and so Plaintiff would be significantly prejudiced by a stay that would amount to an indefinite delay. *See Davis*, 2023 WL 5979207, at *2 (finding this factor weighs against a stay because "it is not clear when a decision will be issued, creating the possibility of prejudice if the delay is extensive"); *see also Buffalo Exchange*, 2024 WL 3675948, at *6 (declining to grant a stay in a similar case "for a decision that may never come.").

As to the second factor, Defendant argues that denying a stay would impose "costs associated with resolving an uncertain claim." (*See* Def's MTD Mem. 25.) Defendant also argues that discovery will be burdensome because this is a putative class action. (*See* Def's MTD Reply 14.) However, the Court is not convinced that the discovery process will be "unduly burdensome for [Defendant]." *Gutierrez*, 2023 WL 7337184, at *5 (citing *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 69 (S.D.N.Y. 2023)); *see also Davis*, 2023 WL 5979207, at *2 (denying a stay where defendant failed to make a sufficient showing on the second factor). Defendant has made a "comparatively weak showing" that is counterbalanced, and outweighed, by Plaintiff's substantial interest and the prejudice. *See Gabay*, 2023 WL 3569351, at *2 (citation omitted).

The third factor, the interests of the courts, weighs heavily in favor of issuing a stay. A stay would promote judicial economy by waiting to see if the New York Court of Appeals takes up *Grant*, in which case it would eventually issue a binding decision. *Mayors v. Port Imperial Ferry Corp.*, No. 24-CV-6815, 2025 WL 34830, at *3 (S.D.N.Y. Jan. 3, 2025); *see Urena*, 2024 WL 1333012, at *2 ("A stay is especially warranted . . . where 'a higher court is close to settling

an important issue of law bearing on the action.'" (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012))).  Finally, the interests of persons not parties to this Action and the public are also served by a stay, as "[t]he promotion of judicial efficiency and comity benefit more than just the courts.  The public has an interest in the avoidance of cost and the respect of the federal judiciary for state judicial proceedings."  *Pineda v. Big City Realty Mgmt., LLC*, No. 22-CV-5428, 2024 WL 5146068, at *13 (E.D.N.Y. Dec. 17, 2024).

While "it is uncertain when, *if ever*, the Court of Appeals will hear an appeal in *Grant*," *Mayors*, 2025 WL 34830, at *3 (emphasis added), multiple courts in this circuit have held that a stay is appropriate with respect to a pending appeal in *Grant*, but in cases where the plaintiffs seek only liquidated damages, *see id.* at *3; *Pineda*, 2024 WL 5146068, at *12–13; Order, ECF No. 33, *Sethy v. Victoria's Secret Stores, LLC*, No. 23-CV-3452 (S.D.N.Y. June 4, 2024); *Pry v. Auto-Chlor Sys., LLC*, No. 23-CV-4541, 2024 WL 3728981, at *2 (S.D.N.Y. Aug. 8, 2024); *Urena*, 2024 WL 1333012, at *2–3.  While this difference distinguishes these cases from the instant Action, it is not enough to overcome the interests weighing in favor of a stay. Accordingly, the Court stays proceedings as to Plaintiff's NYLL § 191 claim, pending the Second Department's ruling on the pending motion for reargument and leave to appeal in *Grant*. The Parties shall submit a joint status letter to the Court no later than two weeks after the Second Department's ruling on the pending motion for leave to appeal.  The letter shall propose next steps, if any, in this Action as they relate to Plaintiff's NYLL § 191 claim.

### III.  Motion for Certification

A.  Standard of Review

The FLSA "requires employers to pay overtime compensation to covered employees." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 81 (2018) (citing 29 U.S.C. § 201 et seq.).  An

employee whose rights under the FLSA were violated may file an action in any federal or state court of competent jurisdiction "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Although the FLSA does not require them to do so, 'district courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations and internal quotation marks omitted)).

Courts refer to this notice facilitation process as "certification." *See, e.g.*, *Myers*, 624 F.3d at 555 n.10. But it does not "create a class of plaintiffs" in the Rule 23 sense, *id.* (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)); rather, it is a "case management tool" to apprise "similarly situated" employees of the case, *id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed "a two-step method of certification in an opt-in collective action under the FLSA." *Lipstein v. 20X Hosp. LLC*, No. 22-CV-4812, 2024 WL 1073154, at *2 (S.D.N.Y. Jan. 24, 2024), *report and recommendation adopted*, 2024 WL 1175079 (S.D.N.Y. Mar. 19, 2024). At the first step—"conditional certification"—the district court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (some internal quotation marks omitted). "Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form." *Tung v. Banzai Steakhouse Inc.*, No. 22-CV-5750, 2023 WL 5827643,

at *2 (S.D.N.Y. Sept. 8, 2023) (quotation marks omitted). The second step comes after discovery is completed: "'if it appears that some or all members of a conditionally certified class are not similarly situated,' a 'defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated.'" *Id.* (quoting *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320–21 (E.D.N.Y. 2012)).

At the first phase, a plaintiff need only make a "modest factual showing" that "[she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted); *see also Wilk v. Quality Installations of NY, Inc.*, 724 F. Supp. 3d 76, 84–85 (E.D.N.Y. Mar. 19, 2024) (finding that plaintiffs had made this modest showing by "provid[ing] actual evidence of a factual nexus between their situation and those that they claim are situated rather than mere conclusory allegations" (citation omitted)). "Although this 'modest factual showing' cannot 'be satisfied simply by unsupported assertions,' it remains a 'low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist.'" *Tung*, 2023 WL 5827643, at *2 (quoting *Myers*, 624 F.3d at 555) (emphasis in original). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *see also Vilella v. Pup Culture LLC*, No. 23-CV-2291, 2023 WL 7986562, at *3 (S.D.N.Y. Nov. 17, 2023) (same). Because "the court applies a fairly lenient standard," courts "typically grant[] conditional certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-CV-322, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (internal quotation marks omitted).

Importantly, at this stage, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Amador*, 2013 WL 494020, at *3 (internal quotation marks omitted). Put differently, "the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Romero v. La Revise Assocs., LLC*, 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (internal quotations omitted). "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification," *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007), and even if "dates of employment and hours worked are unique to each employee," that "does not necessarily create dissimilarity under the FLSA," *Hallissey*, 2008 WL 465112, at *2.

The Court will apply the common two-step approach because, although the FLSA does not require the procedure, *see Myers*, 624 F.3d at 555 & n.10, it is the sensible way to proceed, *see Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (noting that the Second Circuit has endorsed the two-step approach); *Hussein v. Headless Widow LLC*, No. 24-CV-4658, 2024 WL 5078317, at *2–3 (S.D.N.Y. Dec. 11, 2024) (applying the two-step approach).

B.  Analysis

Plaintiff moves for conditional certification as to her FLSA wage claims. (*See generally* Pl's Cert. Mem.) The proposed FLSA collective "consist[s] of all respiratory therapists and all other similarly situated employees (collectively "Respiratory Therapists") who work or worked for Defendants at any time from November 20, 2020 to the present." (Pl's Cert. Mem., Ex. 10

("Proposed Not.") (Dkt. No. 62-10).)  Defendant raises several arguments against conditional

certification, none of which is persuasive.

Plaintiff argues that she has satisfied her burden in showing that "Defendant subjected

Plaintiffs and all other Respiratory Therapists [employed by Defendant] to the same

compensation policies, and that these policies violated the FLSA."  (Pl's Cert. Mem. 11.)

Defendant argues that it has facially lawful timekeeping policies and that putative plaintiffs "fail

to show that proper application of Defendant's policies would have resulted in Plaintiffs not

receiving their alleged proper compensation" and that putative plaintiffs do not explicitly refer to

"what section or wording in [Defendant's] policies violate the FLSA."  (Def's Cert. Opp. 9.)

"Courts have found that even just one employee's declaration would be sufficient for

conditional certification."  *McPherson v. Look Ent. Ltd.*, No. 23-CV-4273, 2024 WL 4265844, at

*5 (E.D.N.Y. Sept. 23, 2024) (emphasis omitted) (citing *Morrison v. Columbus Fam. Health

Care LLC*, 672 F. Supp. 3d 524, 533–34 (S.D. Ohio 2023) (collecting cases)).  Conditional

certification of collective actions is regularly granted based on employee affidavits which state

"an employer's failure to pay minimum wage or overtime and identifying similarly situated

employees by name."  *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 515

(E.D.N.Y. 2011).  Indeed, plaintiffs can clear the low conditional certification threshold even if

they rely exclusively upon their own affidavit in support of certification that therein "relies

heavily upon [the plaintiff's] own experiences and observations."  *See Ramirez v. Liberty One

Grp. LLC*, 22-CV-5892, 2023 WL 4541129, at *8 (S.D.N.Y. July 14, 2023).  Here, Plaintiff and

other opt-in employees aver that, as respiratory therapists employed by Defendant, they were

subject to the same wage policies that resulted in their underpayment and identify similarly

situated employees by name.  (*See* Schiller-Egles Decl. (Dkt. No. 62-2) ¶¶ 3–7, 9; Utzman Decl.

¶¶ 3–7, 9; Hicks Decl. ¶¶ 3–7, 9.)

Defendant argues that the supplied declarations lack detail and fail to provide a factual

nexus between their individuals claims and that of the asserted putative collective.  (Def's Cert.

Opp. 10–14.)  Defendant also asserts that Plaintiff, Utzman, and Hicks fail to "describe the

substance of . . . conversations" between them and other putative collective members.  (*Id.* 11.)

This is a misreading of the supplied declarations, which state that Plaintiff and opt-in employees

know that other respiratory therapists were subject to the alleged underpayment *as a result of*

those conversations.  (*See* Schiller-Egles Decl. ¶ 9; Utzman Decl. ¶ 9; Hicks Decl. ¶ 9.)  The

Court finds that Plaintiff has carried her minimal burden in certifying a conditional collective.

## C.  Equitable Tolling

Plaintiff asks the Court to toll the statute of limitations as of October 2, 2024, the date on

which Plaintiff filed her Motion for Certification.  (*See* Pl's Cert. Mem. 16.).  Defendant argues

that Plaintiff has failed to show diligence or extraordinary circumstances warranting equitable

tolling.  (*See* Def's Cert. Opp. 17–20.)

"In a FLSA collective action, 'the limitations period continues to run for each plaintiff

until he or she files written consent with the court to join the lawsuit.'"  *Tay v. N.Y. and*

*Presbyterian Hosp.*, No. 22-CV-8379, 2024 WL 4286226, at *14 (S.D.N.Y. Sept. 24, 2024)

(quoting *Tung*, 2023 WL 5827643 (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170

(S.D.N.Y. 2014))).  However, "[a] district court may toll the limitations period to avoid

inequitable circumstances, giving due consideration to whether the plaintiffs have acted with

reasonable diligence in pursuing their claims and whether the circumstances are extraordinary

enough to warrant equitable relief."  *Id.*; *see also McGlone v. Contract Callers, Inc.*, 867 F.

Supp. 2d 438, 445 (S.D.N.Y. 2012) ("[C]ourts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances." (citation and quotation marks omitted)).

Courts in this district sometimes permit tolling "during the period the court takes to decide the conditional certification motion."  *See, e.g.*, *Tung*, 2023 WL 5827643, at *7; *Jackson*, 298 F.R.D. at 170 ("The delay required to decide a motion may warrant equitable tolling."). They do so on the theory that it is unfair to penalize plaintiffs for a court's delay when their "putative class representatives and their counsel are diligently and timely pursuing the[ir] claims."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012); *see also Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) ("Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed.").

Although there is a "trend" of authorizing tolling in FLSA cases, it is not automatic; courts must still consider whether a plaintiff was reasonably diligent and whether any extraordinary circumstances stood in the way of filing a claim.  *See Santiago v. Cuisine By Claudette, LLC*, No. 23-CV-2675, 2023 WL 8003323, at *7–8 (E.D.N.Y. Nov. 17, 2023). Courts thus routinely decline to apply tolling where plaintiffs offer conclusory arguments or simply reference the "unique procedural posture" of FLSA collective actions.  *Id.* (declining to apply equitable tolling); *see also Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 147 (E.D.N.Y. Mar. 22, 2024) (finding tolling request "[a]t best" to be "premature" where a plaintiff presented no "extraordinary circumstances" preventing him from exercising his rights

under the FLSA); *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 659–60 (S.D.N.Y. 2017) (same).

Defendant is correct that Plaintiff has offered "nothing more than a categorical tolling request and a reference to cases applying tolling in this posture." (Def's Cert. Opp. 18 (quoting *Tay*, 2024 WL 4286226, at \*15).) Nor has Plaintiff argued that she was especially diligent in filing her Motion for Certification. *Compare Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421, 2021 WL 4502479, at \*7 (E.D.N.Y. Sept. 30, 2021) (finding tolling appropriate where plaintiff filed conditional certification motion one month after parties failed to settle in mediation), *with Tay*, 2024 WL 4286226, at \*15 (declining to find diligence where plaintiff proceeded with discovery for six months before requesting leave to file a motion for certification). It also bears noting that there has not been a significant delay in issuing this Opinion that gives rise to "extraordinary" inequity to potential opt-in plaintiffs. *See Mark v. Gawker Media LLC*, No. 13-CV-4347, 2014 WL 5557489, at \*2–3 (S.D.N.Y. Nov. 3, 2014) (finding eleven-month delay was not "extraordinary"). Plaintiff's request for equitable tolling is therefore denied without prejudice.

D. Notice

Defendant "largely does not dispute many of Plaintiff's requests" and "does not contest providing contact information as requested by Plaintiff." (Def's Cert. Opp. 20.) Defendant requests that any certified collective "be limited to those Respiratory Therapists who worked on-call during the applicable statute of limitations period." (*Id.*) The Court grants this request because it is in accordance with the discussion above and Plaintiff's allegations and hereby certifies a collective consisting of "all respiratory therapists and all other similarly situated

employees (collectively "Respiratory Therapists") who worked on-call for Defendants at any time from November 20, 2020[,] to the present."

Defendant has "some minor suggested changes" to the proposed notices. (Def's Cert. Opp. 20.) In lieu of addressing those suggested changes, the Court directs the Parties to meet and confer regarding the form, substance, and manner of distributing notice, after which the Parties would submit outstanding issues to the Court. *See Tay*, 2024 WL 4286226, at *17 (approving a similar procedure); *see also Flood v. Just Energy Mktg. Corp.*, No. 15-CV-2012, 2016 WL 354078, at *5 (S.D.N.Y. Jan. 25, 2016) ("[C]ourts in this district have approved similar meet-and-confer sessions." (citing *Costello v. Kohl's Ill., Inc.*, No. 13-CV-1359, 2014 WL 4377931, at *8 (S.D.N.Y. Sept. 4, 2014) (directing parties to engage in meet and confer session regarding collective action notice))); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (same). If the Parties agree on a proposal, both they and the Court could be saved multiple rounds of back-and-forth. The Parties shall submit a joint notice proposal consistent with the Court's findings within 30 days of this Opinion & Order. "Should any objections remain after the meet-and-confer, the Court directs counsel to submit a redline version of the Revised Proposed Notice for review and determination by the Court." *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 129 (E.D.N.Y. 2020).

<u>IV.  Conclusion</u>

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part and Plaintiff's Motion to Certify is granted.  The Clerk of the Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 44, 61.)

SO ORDERED.

Dated:  March 25, 2025
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge