**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDA SCHILLER-EGLES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> -against- <br><br> THE PROMPTCARE COMPANIES, INC., d/b/a PROMPT CARE COMPANIES INC. <br><br> Defendant. | No. 7:23-CV-06790 (KMK) |

**DECLARATION OF BRIAN S. SCHAFFER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFF'S PROPOSED NOTICES OF <u>SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE</u>**

I, Brian S. Schaffer, declare as follows:

1. I am a partner at the firm of Fitapelli & Schaffer, LLP ("F&S") in New York, New York, Plaintiff's Counsel herein. F&S is a nationally recognized 8 attorney law firm based in New York City that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims. F&S has significant experience prosecuting wage and hour class and collective actions.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiff's claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## PROCEDURAL HISTORY

### Overview of Investigation and Commencement of Action

4. Before initiating the instant action, F&S conducted a thorough investigation into Defendant's business and ownership, which included research into their wage and hour policies and/or practices, factual and legal research into the underlying merits of Plaintiff's claims and possible defenses, factual and legal research as to the proper measure of damages, and the likelihood of collective and class action certification.

5. Furthermore, F&S conducted an in-depth interview with Linda Schiller-Egles who has worked for Defendant since September 2019. This interview helped F&S determine the hours that respiratory therapists ("collectively, "Respiratory Therapists") were working, the wages they were paid, the nature of their duties, and Defendant's policies regarding on-call time. Specifically, F&S discovered evidence seemingly showing that that Defendant required Respiratory Therapists to perform work while "on call" without paying them for all of their time worked.

6. On June 22, 2023, Plaintiff's Counsel, in an effort to explore a potential pre-litigation resolution of the claims, sent a demand letter to Defendant on behalf of Plaintiff outlining Plaintiff's claims under the Fair Labor Standards Act ("FLSA) and New York Labor Law ("NYLL"), and inviting Defendant to engage in class-wide settlement discussions.

7. On July 31, 2023, Defendant sent letters to all current and former hourly workers in New York, except Plaintiff, offering them money to purportedly compensate them for unpaid overtime for time worked while "on call", plus 9% interest, plus $1,000, in return for a release of all New York Labor Law claims. *See* ECF No. 4.

8. As a result of this, 36 out of 38 New York Class Members signed releases and received settlement payments from Defendant.

9. On August 2, 2023, Plaintiff filed this Action asserting that Defendant violated the FLSA and NYLL with regards to overtime compensation. *See* ECF No. 1, **Exhibit A**. Moreover, the action asserted additional violations for Respiratory Therapists with regards to failure to provide agreed upon wages, and failure to provide accurate wage statements under the NYLL. *Id.*

10. Specifically, with respect to the wage claims, Plaintiff alleged that, in part, Defendant failed to account for all hours worked by Plaintiff and Respiratory Therapists – such as on-call time. *Id.*

11. Specifically, with regard to Plaintiff's NYLL § 191 claim, Defendant paid Plaintiff on a bi-weekly basis. As such, Plaintiff argued that Respiratory Therapists were manual workers, and as such, were required to be paid on a weekly basis under NYLL § 191(1)(a)(i).

12. On October 5, 2023, Joanne Utzman opted into this Action. *See* ECF No. 25.

13. On October 12, 2023, Krista Hicks opted into this Action. *See* ECF No. 26.

14. On October 13, 2023, Cesar Rosario opted into this Action. *See* ECF No. 27. Cesar Rosario opted out of the Settlement on August 29, 2025. *See* ECF No. 88.

15. The Parties executed a class-wide tolling agreement on October 26, 2023 to toll the statute of limitations under the FLSA and NYLL.

16. Defendant filed a motion to dismiss Plaintiff's first, fourth, and fifth causes of action on June 10, 2024. *See* ECF Nos. 44-46.

17. The tolling agreement was terminated on August 16, 2024.

18. Plaintiff filed her motion for preliminary certification pursuant to the FLSA and for court-authorized notice on October 2, 2024. *See* ECF Nos. 61-63.

19. The Court denied Defendant's motion to dismiss and granted Plaintiff's motion for preliminary certification and court-authorized notice on March 25, 2025. *See* ECF No. 70.

20. Defendant filed its answer to Plaintiff's Complaint on April 29, 2025 *See* ECF No. 76.

21. The Parties worked together he next several months to exchange relevant documents necessary to engage in fruitful settlement discussions.

22. Defendant produced relevant documents, including, but not limited to, wage statements, time records and call logs for Named Plaintiff and putative class members.

23. F&S utilized Defendant's production to evaluate Plaintiff's claims and Defendant's defenses. The parties participated in numerous phone calls and sent countless e-mails and letters back and forth regarding the data provided.

24. Upon review of the records, F&S was able to determine the number of potentially affected Respiratory Therapists, their dates of employment, and an estimated number of hours they worked unrecorded.

25. F&S used Defendant's payroll records to calculate class-wide damages by creating damages spreadsheets. Specifically, F&S created a spreadsheet to calculate damages that showed Defendant's potential exposure to liability if they failed to correctly compensate Respiratory Therapists for all of their on-call time.

26. After months of negotiations, the parties reached a settlement in principle for Three Hundred Twenty Five Thousand Dollars ($325,000.00). **Ex. B**, Settlement Agreement ¶¶ 1.24, 3.1(C).

27. On September 11, 2025, the parties fully executed the Settlement Agreement attached hereto as **Exhibit B** ("Settlement Agreement"). The proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing ("Class Notice") that will be mailed to Respiratory Therapists in New York is attached hereto as **Exhibit C**. The proposed Notice of Collective Action

Lawsuit Settlement ("Collective Notice") that will be mailed to Respiratory Therapists outside of New York is attached hereto as **Exhibit D**.

## SETTLEMENT AGREEMENT

28. The $325,000.00 settlement amount (the "Settlement Fund") is a compromise figure.

29. In reaching the settlement, F&S took into account the risks of establishing liability and class and collective certification, and considered the time, delay, and financial repercussions in the event of trial and appeal by Defendant.

30. Although Plaintiff believes her claims have merit, she recognizes the legal, factual, and procedural obstacles to recovery, as Defendant has and will continue to vigorously contest Plaintiff's claims and her ability to obtain class certification if the action does not settle. In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiff and Class Members in the face of several obstacles.

31. The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the costs and risks of continued litigation. Moreover, in our estimation, and based on the data provided by Plaintiff and Defendant, the settlement represents a significant percentage of the recovery that Plaintiff and Class Members would have achieved had they prevailed on all of their claims and survived an appeal.[1]

32. The Settlement Agreement identifies class members as all current and former

---

[1] By obtaining $350,000.00, Plaintiff recovered approximately 70% of their alleged unpaid wage damages of $497,512.654 (accounting for release payments already paid to Class Members; not inclusive of liquidated damages or interest).

Respiratory Therapists and claims Respiratory Therapists who worked for Defendant in New York during December 17, 2016 through January 1, 2023. **Ex. B**, Settlement Agreement, ¶ 1.7. There are 38 Class Members. *Id*.

33. The Settlement Agreement identifies collective members as all current and former Respiratory Therapists who worked for Defendant outside of New York during November 20, 2020 through January 1, 2023. *Id*. at ¶ 1.13. There are 111 collective members. *Id*.

## ALLOCATION FORMULA

34. All class members will be deemed eligible for a payment under this Settlement Agreement. *Id.* ¶ 2.9. All collective members who opt-in to this Action will be deemed eligible for payment under this Settlement Agreement. *Id*.

35. A class member's proportionate share of the Allocations above shall be determined by the Claims Administrator pursuant to the following formula:

   a. Each Class or Member who did not previously receive a release payment from Defendant as a result of the letter dated July 31, 2023, shall be assigned 2 points for each week worked December 17, 2016, through January 1, 2023.

   b. Class Members who previously received a release payment from Defendant as a result of the letter dated July 31, 2023 will receive 0.5 points for each week worked December 17, 2016, through January 1, 2023.

   c. Each Participating Collective Member will receive 1 point for weeks worked November 20, 2020 through January 1, 2023.

   d. The Settlement Fund, after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, any Court-approved Service Awards, the Reserve Fund, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members ("Point Value");

   e. Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

*Id.* ¶ 3.1(A-B).

36. The difference in point allocations is meant to account for (i) New York class members who previously received settlement payments from Defendant and (ii) for the fact that New York class members had additional claims and a longer statute of limitations than the collective members.

## NOTICE PROCESS AND TIMELINE

37. Within fifteen (15) days of the Court's order granting Preliminary Approval, Defendant will provide F&S and the Claims Administrator with a list in electronic form of the Class and Collective Members' names, last known addresses, telephone number, dates of employment, primary state worked in, whether each Class Member received a release payment as a result of Defendant's letter dated July 31, 2023, and social security number during the Relevant Period (the "Class List"). *Id.* ¶¶ 1.7, 2.4.

38. Within thirty (30) days of the Court's order granting Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, the Notices of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all Class Members. *Id.* ¶ 2.5. The Claims Administrator will take all reasonable steps to obtain the correct address of Class Members by cross-referencing the last known addresses provided by Defendant with the National Change of Address database. *Id.*

39. Class Members will have 60 days from the date the Class Notices are mailed to opt-out of the settlement or object to it. *Id.* ¶¶ 2.6, 2.7. Collective Members will have 60 days from the date the Collective Notices are mailed to opt into the settlement. *Id.* ¶ 2.5 (D).

40. If the Court grants Plaintiff's Motion for Judgment and Final Approval, the Court will issue a Final Order. If no party appeals the Court's Final Order, the Final Effective Date will be thirty (30) days following the issuance of the Final Order. *Id.* ¶ 1.20. If rehearing,

reconsideration or appellate review is sought, the Effective Date shall be upon the Court's entry of a final order resolving any appeals. *Id*.

41. Defendant shall fully fund the Settlement Fund within thirty (30) days of the Final Approval Order. *Id*. ¶ 3.1(B).

42. Within fifteen (15) calendar days of the Final Effective Date, the Claims Administrator shall send settlement checks for: (a) each Class Member's individual settlement payment; (b) Class Counsel's approved attorneys' fees and costs; (c) Named Plaintiff's and Opt-In Plaintiff's service awards; and (d) the claims administrator's fees. *Id*. ¶¶ 3.1(C); 3.2.

43. All Class Members who do not timely opt out of the settlement ("Participating Class Members") and all Collective Members who timely submit a claim form ("Participating Collective Members") will receive settlement payments and release all wage and hour claims, except retaliation for participating in the settlement or the litigation, arising under the federal, state and local laws. *Id.* ¶ 4.1 (A).

## CLAIMS ADMINISTRATION

44. The parties have retained Rust Consulting to administer the settlement process. Among other responsibilities, the claims administrator shall be responsible for: mailing the Class and Collective Notices, calculating Class and Collective Members' share of the Net Settlement Fund and issuing and mailing checks to Participating Class and Collective Members as provided in the Settlement Agreement. *Id*. ¶ 1.6. Rust Consulting's CV is attached as **Ex. E.**

45. The Claims Administrator's fees shall be paid from the Settlement Payment. *Id*. 1.2.

## MY BACKGROUND AND EXPERIENCE

46. I received a *Juris Doctor* degree (dean's list) from New York Law School in 2003.

I was admitted to the bar of the State of New York in 2004, and am also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York. I am a member in good standing of each of these bars. I became a partner of F&S in January 2008. Since starting F&S in 2008, I have exclusively represented plaintiffs in employment litigation and other employee rights matters. I have successfully argued cases in the New York State Appellate Division. I am a member of the National Employment Lawyers Association ("NELA"), NELA's New York Chapter, the New York County Lawyer's Association ("NYCLA"), and the American Bar Association ("ABA"). I have served as a panelist at CLE presentations for wage and hour issues for NELA, NYCLA, ACI, and Lawline. I have frequently been contacted by the media and the press to discuss current employment law related issues, and was a contributing editor to the ABA's 2020 FLSA treatise.

47. F&S has significant experience prosecuting wage and hour class and collective actions such as this one. The firm has prosecuted wage and hour cases that have been certified as class or collective actions with F&S being appointed class counsel, including: *See, e.g.*, *Smith v. Akela Contracting LLC et al*, No. 22 Civ. 01185, ECF No. 188 (S.D.N.Y. May 6, 2025); *Imbarrato et al v. Banta Management Services, Inc.*, No. 18 Civ. 05422, ECF No. 114 (S.D.N.Y. Oct. 10, 2024); *Mangahas v. Eight Oranges Inc.*, No. 22 Civ. 4150, 2024 WL 2801922 (S.D.N.Y. May 31, 2024); *Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 104 (S.D.N.Y. July 12, 2023); *Lanning v. Wells Fargo Bank, N.A.*, No. 20 Civ. 2055, ECF No. 55 (S.D.N.Y. Nov. 24, 2021); *McSpirit v. Coventbridge (USA) Inc.*, No. 20 Civ. 5754, ECF No. 26 (S.D.N.Y. July 15, 2021); *Spiciarich v. The Gorman Group, LLC*, No. 20 Civ. 646, ECF No. 31 (N.D.N.Y. Apr. 15, 2021); *Bruno v. Wells Fargo Bank N.A.*, No. 19 Civ. 587 (RJC), 2021 WL 964938 (W.D. Pa. Mar. 15, 2021); *Hernandez v. Lochend Energy Services*, No. 20 Civ. 00064, ECF No. 44 (D.N.D. March 5, 2021); *Bruton v.*

*Pioneer Natural Resources Company*, No. 20 Civ. 00203, ECF No. 20 (W.D. Tex. Jan. 27, 2021); *Kirby v. FIC Restaurants, Inc.*, No. 19 Civ. 1306 (FJS/ML), 2020 WL 3501398 (N.D.N.Y. Jun. 29, 2020)*Lu v. OD Inspections*, No. 20 Civ. 02063, ECF No. 24 (S.D. Tex. Dec. 24, 2020); *LeJeune v. Mammoth Energy Services, Inc.,* No. 19 Civ. 00286, ECF No. 102 (W.D. Tex. July 31, 2020); *Millin v. Brooklyn Born Chocolate*, No. 19 Civ. 3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020); *Warren v. MBI Energy Services, Inc.*, No. 19 Civ. 00800, ECF No. 33 (D. Colo. Feb. 25, 2020); *Carr v. Patriot Well Solutions, LLC*, No. 5:19 Civ. 00212, ECF No. 62 (W.D. Tex. Feb. 11, 2020); *Murillo v. Berry Bros. General Contractors, Inc.*, No. 6:18-cv-1434, 2019 WL 4640010 (W.D. La. Sept. 23, 2019); *Borecki v. Raymours Furniture Company, Inc*., No. 17 Civ. 01188, ECF No. 98 (Sept. 10, 2019); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16 Civ. 03958, ECF No. 95 (N.D. Ill. Nov. 16, 2018); *Schaefer v. M&T Bank Corporation*, No. 14 Civ. 06622, ECF No. 90 (S.D.N.Y. Nov. 1, 2018); *De Jesus et al. v. Incinia Contracting, Inc.*, No. 17 Civ. 5733 (KHP), 2018 WL 3343236 (S.D.N.Y. June 22, 2018); *Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319, (S.D.N.Y. April 13, 2018); *Zorrilla v. Carlson Rests., Inc*., No. 14 Civ. 2740 (AT), 2018 WL 1737139 (April 9, 2018); *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 00849 (OLG) (RBF), 2017 WL 5491998 (W.D.T.X. Nov. 11, 2017); *Sanchez v. Bentzys Construction, Inc.*, No. 16 Civ. 07072 (E.D.N.Y. Sept. 19, 2017); *Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619 (S.D.N.Y. September 11, 2017); *Hotaranu v. Star Nissan Inc.*, No. 16 Civ. 5320 (KAM) (RML), 2017 WL 1390808 (E.D.N.Y. April 12, 2017);  *Crosby et al. v. Lasership, Inc.*, No. 15 Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017); *Almonte v. Marina Ice Cream Corp.*, No. 16 Civ. 00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016); *Illoldi v. Koi NY LLC*, No. 1:15 Civ. 06838 (VEC), 2016 WL 5900218 (S.D.N.Y. Oct. 7, 2016); *Hadel v. Gaucho*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600 (S.D.N.Y. June 30, 2016); *Chhab v. Darden Restaurants Inc.*, No.

11 Civ. 08345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016); *Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (S.D.N.Y. April 27, 2016); *Gonqueh v. Leros Point to Point, Inc.*, 14 Civ. 5883 (GHW), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016); *Bravo v. Palm W. Corp.*, No. 14 Civ. 9193 (SN), 2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015); *Carpenter v. Paige Hospitality Group, LLC*, No. 13 Civ. 4009 (GBD), 2015 U.S. Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015); *Hamadou v. Hess Corporation*, No. 12 Civ. 250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Espinoza v. Wanrong Trading Corp.*, No. 13 Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015); *Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014); *Simsek v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979 (E.D.N.Y. Feb. 14, 2014); *Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP), ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

## **EXHIBITS**

48. Attached as **Exhibit A** is a true and correct copy of Plaintiff's Complaint filed in this matter.

49. Attached as **Exhibit B** is a true and correct copy of the parties' Settlement Agreement, which was fully executed by the parties on September 11, 2025.

50. Attached as **Exhibit C** is the proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing.

51. Attached as **Exhibit D** is the proposed Notice of Collective Action Lawsuit Settlement and Fairness Hearing.

52. Attached as **Exhibit E** is a true and correct copy of Rust Consulting's Curriculum Vitae.

53. Attached as **Exhibit F** is a true and correct copy of Plaintiff's proposed Order granting Plaintiff's Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notices of Settlement and Class Action Settlement Procedure.

Dated: New York, New York
       September 12, 2025

                              Respectfully submitted,

                              */s/ Brian S. Schaffer*
                              Brian S. Schaffer

                              **FITAPELLI & SCHAFFER, LLP**
                              Brian S. Schaffer
                              Dana M. Cimera
                              28 Liberty Street, 30th Floor
                              New York, New York 10005

Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Class and Collective*