# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

**LINDA SCHILLER-EGLES, individually and on behalf of all others similarly situated,**

**Plaintiff,**

-against-

**THE PROMPTCARE COMPANIES, INC., d/b/a PROMPT CARE COMPANIES INC.**

**Defendant.**

No. 7:23-CV-06790 (KMK)

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFF'S PROPOSED NOTICES OF <u>SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE</u>

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Class*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

PROCEDURAL BACKGROUND ............................................................................... 1

   I.    OVERVIEW OF INVESTIGATION AND COMMENCEMENT OF THE ACTION . 1

SUMMARY OF THE SETTLEMENT TERMS ........................................................ 3

   I.    THE SETTLEMENT FUND ........................................................................ 3

   II.    ELIGIBLE EMPLOYEES ......................................................................... 3

   III.    RELEASE ............................................................................................. 4

   IV.    ALLOCATION FORMULA .................................................................... 4

   V.    ATTORNEYS' FEES AND LITIGATION COSTS ................................... 5

   CLASS ACTION SETTLEMENT PROCEDURE .................................................... 5

ARGUMENT ............................................................................................................ 7

   I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ......... 7

      A.   The Settlement is Fair, Reasonable, and Adequate ..................................... 9

      1.   Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).. 9

      2.   The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2). ........................... 10

      3.   Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3). ....................................................................... 11

      4.   Plaintiff Would Face Real Risks If The Case Proceeded, Including Risks Of Establishing Liability And Damages (*Grinnell* Factors 4 and 5). ....................................... 12

      5.   Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6). ....................................................................................... 13

      6.   Defendant's Ability To Withstand A Greater Judgment Is Not Assured (*Grinnell* Factor 7). .......................................................................................................... 13

      7.   The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9). ...................................................... 13

   II.    CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE ................................................................................................ 15

      A.   Numerosity ......................................................................................... 17

      B.   Commonality ..................................................................................... 17

      C.   Typicality .......................................................................................... 19

      D.   Adequacy Of The Named Plaintiff ...................................................... 19

      E.   Certification Is Proper Under Rule 23(b)(3) ......................................... 20

   III.    F&S SHOULD BE APPOINTED AS CLASS COUNSEL ........................ 22

**IV.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE** ........................................................................ 23

**V.    PLAINTIFF ALSO SEEKS APPROVAL OF THE FLSA SETTLEMENT** ............... 24

**CONCLUSION** ........................................................................................................ 25

**CERTIFICATION** ................................................................................................... 25

**INTRODUCTION**

Subject to Court approval, Named Plaintiff Linda Schiller-Egles has settled this wage and hour class and collective action against The PromptCare Companies, Inc. ("Defendant" or "PromptCare") for the sum of Three Hundred Twenty Five Thousand Dollars ($325,000.00). The proposed settlement resolves Plaintiff's claims on a class and collective basis, resolves the litigation in its entirety, and satisfies all of the criteria for preliminary settlement approval.

Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A** to the Declaration of Brian S. Schaffer ("Schaffer Decl.");[1] (2) for settlement purposes only, conditionally certify the settlement class under Fed. R. Civ. P. 23; (3) appoint Fitapelli & Schaffer, LLP ("F&S") as Class Counsel; and (4) approve the proposed Notice of Class Action Lawsuit Settlement ("Class Notice") and the proposed Notice of Collective Action Lawsuit Settlement ("Collective Notice"), which is attached as **Exhibits B-C** to the Schaffer Decl., and direct their distribution.

**PROCEDURAL BACKGROUND[2]**

**I.    OVERVIEW OF INVESTIGATION AND COMMENCEMENT OF THE ACTION**

Before initiating the instant action, F&S conducted a thorough investigation into Defendant, its wage and hour policies, and factual and legal research of the underlying merits of Plaintiff's claims. Schaffer Decl. ¶ 4. F&S also conducted an in-depth interview with Linda Schiller-Egles. *Id.* ¶ 5.

On June 22, 2023, Plaintiff's Counsel, in an effort to explore a potential pre-litigation resolution of the claims, sent a demand letter to Defendant on behalf of Plaintiff outlining

---

[1]    Unless otherwise indicated, all exhibits are attached to the Schaffer Decl. Unless otherwise stated, all defined terms herein reflect the definitions in the Settlement Agreement.

[2]    For a detailed account of the procedural background, please see the Schaffer Decl.

Plaintiff's claims under the Fair Labor Standards Act ("FLSA) and New York Labor Law ("NYLL"), and inviting Defendant to engage in class-wide settlement discussions. *Id.* ¶ 6. Thereafter, on July 31, 2023, Defendant sent letters to all current and former hourly workers in New York, except Plaintiff, offering them money to purportedly compensate them for unpaid overtime for time worked while "on call", plus 9% interest, plus $1,000, in return for a release of all New York Labor Law claims. *Id.* ¶ 7. Approximately 36 out of 38 New York class members signed releases based on this letter. *Id.* ¶ 8.

On August 2, 2023, Plaintiff commenced a class and collective action on behalf of herself and all other similarly situated respiratory therapists (collectively "Respiratory Therapists") employed or previously employed by Defendant. *Id.* ¶ 9-10; *see also* **Exhibit F**. The action asserted that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") with regards to overtime compensation. *Id.* Moreover, the action asserted additional violations for Respiratory Therapists with regards to failure to provide agreed upon wages, and failure to provide accurate wage statements under the NYLL. *Id.*

On October 5, 2023, Joanne Utzman opted into this Action. *Id.* at ¶ 12. On October 12, 2023, Krista Hicks opted into this Action. *Id.* at ¶ 13. The Parties executed a class-wide tolling agreement on October 26, 2023 to toll the statute of limitations under the FLSA and NYLL, which was terminated on August 16, 2024. *Id.* at ¶ 15, 17.

Defendant filed a motion to dismiss Plaintiff's first, fourth, and fifth causes of action on June 10, 2024. *Id.* at ¶ 16. Plaintiff filed her motion for preliminary certification pursuant to the FLSA and for court-authorized notice on October 2, 2024. *Id.* at ¶ 18. The Court denied Defendant's motion to dismiss and granted Plaintiff's motion for preliminary certification and court-authorized notice on March 25, 2025. *Id.* at ¶ 19. Defendant filed its answer to Plaintiff's

Complaint on April 29, 2025. *Id*. at ¶ 20.

The Parties worked together he next several months to exchange relevant documents necessary to engage in fruitful settlement discussions. *Id*. at ¶ 21. In this regard, Defendant produced relevant documents, including, but not limited to, wage statements, time and on- call records and call logs for Named Plaintiff and putative class members. *Id*. at ¶ 22. F&S utilized Defendant's production to evaluate Plaintiff's claims and Defendant's defenses. The parties participated in numerous phone calls and sent countless e-mails and letters back and forth regarding the data provided. *Id*. at ¶ 23. Upon review of the records, F&S was able to determine the number of potentially affected Respiratory Therapists, their dates of employment, and an estimated number of hours they worked unrecorded. *Id.* at ¶ 25. F&S then used Defendant's payroll records to calculate class-wide damages. *Id.*. After months of negotiations, the parties reached a settlement in principle of Three Hundred Twenty Five Thousand Dollars ($325,000). *Id.* ¶ 26. On September 11, 2025, the parties executed the Settlement Agreement attached to the Schaffer Decl. as **Ex. B**. *Id*. ¶ 27.

## SUMMARY OF THE SETTLEMENT TERMS

### I.    THE SETTLEMENT FUND

The Settlement Agreement requires Defendant to pay the Gross Settlement Amount of $325,000.00. **Ex. B**, Settlement Agreement ¶ 3.1. The Settlement Amount covers class members' individual settlement amounts, service payment to the Named Plaintiff, attorneys' fees and costs, and the claims administrator's fees. *Id.* ¶ 3.1(A). Defendant will fully fund the Settlement Payment within 30 days of the Court's Final Approval Order. Schaffer Decl. ¶ 41.

### II.    ELIGIBLE EMPLOYEES

The Settlement Agreement defines Class Members as all current and former Respiratory

Therapists who worked for Defendant in New York during December 17, 2016 through January 1, 2023. **Ex. B**, Settlement Agreement ¶ 1.7. The Class size is approximately 38 individuals. Schaffer Decl. ¶ 32. The Settlement Agreement defines Collective Members as all current and former Respiratory Therapists who worked for Defendant outside of New York during November 20, 2020 through January 1, 2023. **Ex. B**, Settlement Agreement ¶ 1.13. The Collective size is approximately 111 individuals. Schaffer Decl. ¶ 33.

### III.    RELEASE

The Settlement Agreement provides that every Class Member who does not timely opt out of the settlement ("Participating Class Member") and every Collective Member who timely submits a claim form ("Participating Collective Member") will release Defendant from all wage and hour claims under the federal, state and local laws of New York through January 1, 2023, which is when the alleged unlawful practice at issue ended. *Id.* Settlement Agreement ¶¶ 4(A)-(C).

### IV.    ALLOCATION FORMULA

A Class Member's or Participating Collective Member's proportionate share of the Net Settlement shall be determined by the Claims Administrator pursuant to the following formula:

    a.  Each Class Member who did not previously receive a release payment from Defendant as a result of the letter dated July 31, 2023, shall be assigned 2 points for each week worked December 17, 2016, through January 1, 2023.

    b.  Class Members who previously received a release payment from Defendant as a result of the letter dated July 31, 2023 will receive 0.5 points for each week worked December 17, 2016, through January 1, 2023.

    c.  Each Participating Collective Member will receive 1 point for weeks worked November 20, 2020 through January 1, 2023.

    d.  The Settlement Fund, after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, any Court-approved Service Awards, the Reserve Fund, and all other court approved expenses or disbursements,

will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members ("Point Value");

e.  Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

**Ex. B**, Settlement Agreement ¶ 3.1(A-B). The difference in point allocations is meant to account for (i) New York class members who previously received settlement payments from Defendant and (ii) for the fact that New York class members had additional claims and a longer statute of limitations than the collective members. Schaffer Decl. at ¶ 36.

## V.    ATTORNEYS' FEES AND LITIGATION COSTS

F&S will apply for one third (33 1/3%) of the Settlement Amount as attorneys' fees plus costs.

**Ex. B**, Settlement Agreement, ¶ 3.2(A).  This is the typical fee award in the Second Circuit.  *See, e.g.*, *Hadel v. Gaucho*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600 (S.D.N.Y. June 30, 2016) (approving F&S' request for one-third of settlement fund); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *13 (S.D.N.Y. July 31, 2014) (finding request for one-third of the settlement fund "reasonable and 'consistent with the norms of class litigation in this circuit'"). The Court need not rule on fees and costs now; F&S will file a formal motion for approval of fees and costs with its motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h).

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be

> heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, affirming F&S as Class Counsel, approving the proposed Notices and authorizing their distribution by the Claims Administrator.

Plaintiff respectfully submits the following proposed schedule for final resolution:

1. Within 15 days of the Court's Order granting Preliminary Approval, Defendant will provide F&S and the claims administrator with a list in electronic form of the Class and Collective Members': names, last known addresses, telephone numbers, dates of employment, primary state worked in, and whether each Class Member previously received a release payment as a result of Defendant's letter dated July 31, 2023 (the "Class List"). **Ex. B**, Settlement Agreement ¶¶ 1.7, 2.4.

2. Within 30 days of the Court's Order granting Preliminary Approval, the claims administrator shall mail, via First Class United States mail, the Class Notice and Collective Notice to all Class and Collective Members, respectively, using each individual's last known address. *Id.* ¶ 2.5. The Claims Administrator will take all reasonable steps to obtain the correct address of Class Members by cross-referencing the last known addresses provided by Defendant with the National Change of Address database. *Id.*

3. Class Members will have 60 days from the date the Class Notices are mailed to opt-out of the settlement or object to it. *Id.* ¶¶ 2.6, 2.7. Collective Members will have 60 days from the date the Collective Notices are mailed to opt into the settlement. *Id.* ¶ 2.5 (D).

4. If the Court grants Plaintiff's Motion for Final Approval, the Court will issue a Final Order. If no party appeals the Court's Final Order, the Final Effective Date will be thirty (30) days following the issuance of the Final Order. If rehearing, reconsideration or appellate review is sought, the Effective Date shall be upon the Court's entry of a final order resolving any appeals. *Id.* ¶ 5.13.

5.      Defendant shall fully fund the Settlement Fund within 30 days of the Final Effective Date. *Id*. ¶ 3.1(B).

6.      Within 15 days of the Final Effective Date, the claims administrator shall send settlement checks for: (a) each Participating Claimant's individual settlement payment; (b) class counsel's approved attorneys' fees and costs; (c) the approved service awards; and (d) the claims administrator's fees. Settlement Agreement ¶¶ 3.1(C), 3.2.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *see also Newberg* § 11.41.  The approval of a proposed class action settlement is a matter of discretion for the trial court. *Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB), 2020 WL 5796203, at *3 (S.D.N.Y. Sep. 29, 2020) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). In exercising this discretion, "district courts often give weight to the fact that the parties have chosen to settle." *Id.* (citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG) 2013 WL 1832181 at *1 (S.D.N.Y. Apr. 30, 2013)).

"Preliminary approval of a proposed class action settlement is the first step in a two-step process required by Fed. R. Civ. P. 23(e) before a class action may be settled." *Hart v. BHH, LLC*, 334 F.R.D. 74, 76 (S.D.N.Y. 2020). "If preliminary approval is granted, plaintiffs are permitted to disseminate notice of a hearing to the class members where class members and settling parties are provided an opportunity to be heard on the question of final court approval." *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020) (Liman, J.). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of

written submissions and an informal presentation by the settling parties. *See Chhab v. Darden Restaurants, Inc. et al.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *1 (S.D.N.Y. May 20, 2016); *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679 (CM) et al., 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB), 2024 WL 472841, at *2 (S.D.N.Y. Feb. 6, 2024) (quoting *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014)). "The preliminary determination of fairness 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651, at *3 (S.D.N.Y. Sept. 11, 2015).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "As the Second Circuit has explained, a 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Bondi v. DeFalco*, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *3 (S.D.N.Y. May 13, 2020) (quoting *Wal-Mart Stores*, 396 F.3d at 116). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240 (CM) *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), aff'd, 117 F.3d 721 (2d Cir. 1997). "If the proposed settlement appears to fall within

the range of possible approval, the court should order that the class members receive notice of the settlement." *Yuzary*, 2013 WL 1832181, at *1. Therefore, it is "unusual" for a Court to deny any application for preliminary approval of a class action settlement agreement. *Bondi*, 2020 WL 2476006, at *3 citing *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 314 (W.D.N.Y. 2016); *Brown v. Sega Amusements, U.S.A.*, Inc., No. 13 Civ. 7558, 2015 WL 1062409, at *1, n.2 (S.D.N.Y. Mar. 9, 2015).

**A.    The Settlement is Fair, Reasonable, and Adequate**

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*  For the following reasons, the *Grinnell* factors weigh in favor of approval.

1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Surdu v. Madison Global, LLC,* No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff avoids significant expense and delay and ensures a speedy, risk-free recovery for the Class.  "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception, with 38 Class Members and 111 Collective Members, and highly fact-intensive federal and state law claims that could potentially affect class and collective treatment before this Court. Schaffer Decl. ¶¶ 32-33.

Although there has been significant informal discovery, additional discovery would be required to establish liability and damages, including depositions of Plaintiff, Class Members, Defendant, and Defendant's managers and/or employees. A fact-intensive trial would also be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Baudin v. Resource Marketing Corp., LLC*, No. 19 Civ. 386 (MAD)(CFH), 2020 WL 4732083, at *7 (N.D.N.Y. Aug. 13, 2020) (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC,* No. 15-CV-3538 (VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) (held that "Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued."). Here, the named Plaintiff and Opt-In Plaintiffs expressed their approval of the settlement terms by approving and signing the Settlement Agreement. *See* **Ex. B**, Settlement Agreement. After notice issues and Class Members have had an opportunity to weigh in, the Court can more fully analyze this factor.

3.  <u>Discovery Has Advanced Far Enough To Allow The Parties To Responsibly
    Resolve The Case (*Grinnell* Factor 3).</u>

The Parties have completed enough discovery to recommend settlement.  The pertinent question is "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020) quoting *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *11 (S.D.N.Y. Oct. 16, 2019); *see also Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the court the opportunity to "'intelligently [ ] make . . . an appraisal' of the Settlement."). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000).

The parties' discovery meets this standard.  F&S thoroughly researched the factual and legal issues relevant to the claims at hand, interviewed Plaintiff, and reviewed thousands of pages of relevant documents from Defendant. Schaffer Decl. ¶¶ 4-5, 23-25.  Furthermore, the discussed settlement for many months, and the settlement negotiations were at all times hard fought and at arm's length. *Id.* ¶¶ 23-24; *see, e.g., Baudin*, 2020 WL 4732083 at *7 (finding that targeted discovery exchanged by the parties to perform damages calculations before a mediation was "more than sufficient" to satisfy the third Grinnell factor"); *Matheson v. T-Bone Restaurant LLC,* No. 09 Civ. 4214 (DAB), 2011 WL 6402303, at *1 (S.D.N.Y. Sept. 13, 2011) (noting the help of a third party enforces the fact that an agreement is non-collusive). Thus, this factor supports approval. Thus,

this factor supports approval.

    4.   <u>Plaintiff Would Face Real Risks If The Case Proceeded, Including Risks Of Establishing Liability And Damages (*Grinnell* Factors 4 and 5).</u>

Although Plaintiff believes her claims are strong, it is not without risk that she would face should this case proceed. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS) (KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc.,* No. 12 CIV. 3996 CM, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) quoting *In re Austrian*, 80 F. Supp. 2d at 177.

Given the fact-intensive nature of Plaintiff's claims, a trial on the merits would involve significant risk. Plaintiff would face substantial litigation over whether Plaintiff was even owed "gap time" compensation in the first place under the NYLL. While Plaintiff believes that she could ultimately establish Defendant's liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. Defendant has stated that it believes its pay practices were lawful and that it would defeat most if not all of the claims if the case were litigated. Furthermore, a substantial portion of the Class Members signed NYLL releases which Defendant would seek to enforce.

The proposed settlement alleviates this uncertainty and therefore supports approval. *See Baudin*, 2020 WL 4732083, at *8 (finding that the plaintiff's need to prove that they worked unpaid overtime hour would involve "risks to both liability and damages").

5. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial also supports preliminary approval.  Prior to settlement, the Court has not yet certified the class under Rule 23. Such determinations would likely be reached only after rounds of extensive briefing.  While the Court has granted conditional collective certification, Defendant could challenge such certification with a motion to decertify.  *See, e.g.*, *Holick v. Cellular Sales of New York, LLC*, No. 12 Civ. 584 (NAM/DJS), 2019 WL 1877176, at *9 (N.D.N.Y. Apr. 26, 2019) *(appeal filed* 2019 WL 1877176) (decertifying FLSA collective); *Harper v. GEICO*, No. 09 Civ. 2254 (LDW) (GRB), 2015 WL 9673810, at *6 (E.D.N.Y. Nov. 16, 2015) (recommending decertification of FLSA collective). Even if the court certifies the class, Defendant might seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). This settlement eliminates this risk and delay, and supports preliminary approval.

6. Defendant's Ability To Withstand A Greater Judgment Is Not Assured (*Grinnell* Factor 7).

Whether or not Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7. The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9).

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"
*Baudin v. Res. Mktg. Corp., LLC*, No. 119 Civ. 386 (MAD)(CFH), 2020 WL 4732083, at \*9
(N.D.N.Y. Aug. 13, 2020), *on reconsideration in part*, No. 119 Civ. 386 (MAD)(CFH), 2020 WL
6131758 (N.D.N.Y. Oct. 19, 2020).

Indeed, "when settlement assures immediate payment of substantial amounts to class
members, even if it means sacrificing speculative payment of a hypothetically larger amount years
down the road, settlement is reasonable." *See Long*, 2015 WL 5444651, at \*5.  "[T]here is no
reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a
thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2;
*see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at \*12-13 (E.D.N.Y.
May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible
recovery would be approximately $121 million").

The $325,000 settlement amount represents a good value to Plaintiff and the Class
Members.  Pursuant to the amendments to NYLL § 191, as of May 9, 2025, liquidated damages are
no longer available for violations of this section. In F&S' estimation, the settlement amount
represents approximately 70% of the Class Members' unpaid wage damages, accounting for
payments already made to Class Members and not including liquidated damages or interest. The
settlement amount is a significant percentage of the recovery that Plaintiff would have achieved
had she prevailed on all of their claims and survived an appeal.  *Id.* ¶ 32 fn. 1.

This percentage is well within the realm of reasonableness for settlement approval. *Medina
v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2024 WL 230745, at \*5 (S.D.N.Y. Jan. 22,
2024) ("In light of the best possible recovery and the inherent risks of litigation" the court held
that 6.82% recovery was "within the range of reasonableness."); *Perez v. Ultra Shine Car Wash,*

14

*Inc.*, No. 20 Civ.782 (KMK), 2022 WL 2129053, at \*3 (S.D.N.Y. June 14, 2022) (discussing recoveries between the 4% to 11% range and stating that such percentage should be judged "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement" and finding it fair and reasonable); *Amigon v. Safeway Constr. Enters., LLC*, No. 20-CV-5222 (PK), 2024 WL 5040436, at \*6 (E.D.N.Y. Dec. 9, 2024) ("12.32% of the best possible recovery or approximately 28.38% of the alleged unpaid wages" weighed in favor of preliminary approval); *Axelrod v. PosiGen CT LLC*, No. 3:22-CV-00440 (JCH), 2022 WL 18775907, at \*4 (D. Conn. Nov. 7, 2022) (recommending approval for 2.78% recovery because, although low, where other factors supported approval, "courts typically do not let the percentage of recovery impede approval, because ethe parties are generally better-positioned to judge the reasonableness of the settlement amount").

Additionally, in F&S' experience, class action cases are inherently high risk due to the duration of the litigation and the possibility of unexpected collection issues. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable. Moreover, while there is inherent uncertainty to any litigation analysis, this is particularly true during the ongoing COVID-19 pandemic. As a result, this factor supports approval.

## II. CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

Plaintiff respectfully requests that, pursuant to the Settlement Agreement, the Court conditionally certify the following Fed. R. Civ. P. 23 class for settlement purposes:

> All current and former Respiratory Therapists who worked for Defendant in the State of New York during December 17, 2016 through January 6, 2019.

**Ex. B**, Settlement Agreement ¶ 1.7.

The FRCP 23 Class meets all of the requirements for class certification for settlement purposes, and Defendant (while reserving the right to oppose certification for any other purpose) does not oppose provisional certification for settlement purposes only. *See also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.

Under Rule 23(a), a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Within the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt

a standard of flexibility in evaluating class certification." *See Baudin*, 2020 WL 4732083, at *4

(quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006)).

Moreover, "it seems beyond peradventure that the Second Circuit's general preference is for

granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361

(E.D.N.Y. 2009).

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity is presumed where a putative class

has forty or more members, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d

Cir. 2011), 40 is not a magic number; courts have certified classes of fewer than 40 members. *See*

*Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 778 (7th Cir. 2021) (noting that "a putative class

over 40 is not inevitably endowed with numerosity status"); *Zeller v. PDC Corp.*, No. 13 Civ. 5035

(ARR)(JO), 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016), *report and recommendation*

*adopted*, No. 13-CV-5035 (ARR)(JO), 2016 WL 775762 (E.D.N.Y. Feb. 25, 2016) (granting

conditional class certification for a class of 22 New York class members); *Chambery v. Tuxedo*

*Junction Inc.*, 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) (granting preliminary approval of

settlement and conditional class certification of Pennsylvania and Ohio classes with 29 and 15

members respectively). Plaintiff satisfies the numerosity requirement because the number of Class

Members is approximately 38 individuals. Schaffer Decl. ¶ 32.

### B. Commonality

The proposed Class also satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2),

the purpose of which is to test "whether the named plaintiff's claim and the class claims are so

interrelated that the interests of the class members will be fairly and adequately protected in their

absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The commonality requirement is satisfied where the injuries complained of by the plaintiffs allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members.  *See Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001).

The "Rule does not require that all questions of law or fact raised be common . . . [t]here must be a unifying thread among the claims to warrant class certification."  *Karic v. Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV), 2015 WL 9433847, at *5 (E.D.N.Y. Dec. 22, 2015), report and recommendation adopted sub nom. *Karic v. The Major Auto. Companies, Inc.*, No. 09 Civ. 5708, 2016 WL 323673 (ENV) (CLP) (E.D.N.Y. Jan. 26, 2016).  "[A]s long as common questions predominate, any differences in the circumstances raised by individual members will not defeat the requirement of commonality."  *Id.*  Courts have explained that a single question of law or of fact will suffice.  *See, e.g.*, *id.*  Moreover, "[c]ourts construe the commonality requirement liberally."  *Baudin*, 2020 WL 4732083, at *4 (citing *Frank*, 228 F.R.D. at 181).

This case involves several common factual and legal issues.  Plaintiff and Class Members all bring nearly identical claims arising from Defendant's alleged violations of the FLSA and the NYLL, for failure to pay the correct overtime compensation, as well as Defendant's failure to pay agreed upon wages, overtime wages, provided timely wage payments, and accurate wage statements.  *See e.g.*, *Baudin*, 2020 WL 4732083, at *4 ("[h]ere, the case involves numerous common issues. Plaintiff and [c]lass [m]embers all bring identical claims, *i.e.*, that [d]efendant fail to pay them overtime wages for hours worked "off the clock," in violation of the FLSA and New York wage and hour law"); *Beebe v. V&J National Enterprises, LLC*, No. 17 Civ. 6075 (EAW), 2020 WL 2833009, at *5 (W.D.N.Y. June 1, 2020) (finding that common questions surrounding defendants vehicular reimbursement policy satisfied the commonality requirement); *Illoldi et al. v. Koi NY LLC et al.*, No. 15 Civ. 6838 (VEC),

2016 WL 3099372, at *2 (S.D.N.Y. May 31, 2016) ("Plaintiff and class members all bring nearly identical claims arising from Defendant's alleged uniform violations of the FLSA and NYLL"). Therefore, the proposed Class satisfies the commonality requirement.

### C.  Typicality

Rule 23(a)(3)'s typicality requirement is also satisfied. Like the commonality requirement, typicality does not require identical claims; rather, it is found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Karic*, 2015 WL 9433847, at *5; *Yuzary*, 2013 WL 1832181, at *3. "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). The claims "only need to share the same essential characteristics, and need not be identical." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citation omitted).

Plaintiff's claims meet the typicality requirement because they arise from the same factual and legal circumstances that form the basis of the Class Members' claims. In this regard, Defendant's alleged violations of law resulted from their alleged on-call policies. Accordingly, Plaintiff satisfies the typicality requirement. *See Odom*, 275 F.R.D. at 408; *Karic*, 2015 WL 9433847, at *5 (finding typicality "[i]rrespective of any differences in the amounts of overtime, wages or maintenance allowances owed"); *Bravo*, 2015 WL 5826715, at *3 (finding typicality where plaintiffs claim that defendants "failed to properly pay them in accordance with the FLSA and NYLL"); *Long*, 2015 WL 5444651, at * 7.

### D.  Adequacy Of The Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). This requires a showing that class counsel is "qualified, experienced and generally able to conduct the litigation" and that "class members' interests may not be antagonistic to one another." *Karic*, 2015 9433847, at *6. For a conflict "to defeat certification, it must be fundamental." *Id.*

Here, the named Plaintiff is represented by counsel who are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions. Schaffer Decl. ¶¶ 48-49. In addition, given that there is no evidence that the named Plaintiff and Class Members' interests are at odds, the adequacy requirement is met. *See, e.g.*, *Baudin*, 2020 WL 4732083, at *6 (finding adequacy proper where "there is no evidence the interests of [p]laintiffs and the [c]lass [m]embers are at odds" and class counsel had "established that they are qualified, experienced, and able to conduct litigation of this case"); *Karic*, 2015 WL 9433847, at *6. Therefore, the named Plaintiff meets the adequacy requirement.

### E. Certification Is Proper Under Rule 23(b)(3)

#### 1. Common Questions Predominate.

To establish predominance, Plaintiff must demonstrate that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Beebe*, 2020 WL 2833009, at *5 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Courts have found a plaintiff's satisfaction of the typicality requirement of Rule 23(a) is perhaps the best indicator that Rule 23(b)(3) has been satisfied. *See, e.g.*, *Baudin*, 2020 WL 4732083, at

\*5 (quoting *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986)) ("satisfaction of Rule 23(a) 'goes a long way toward satisfying the Rule 23(b)(3) requirement'"). In addition, "[n]umerous courts have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'—despite differences in hours worked, wages paid, and wages due." *Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 281 (S.D.N.Y. 2012).

In this regard, the common factual allegations and legal theory is that Plaintiff was entitled to compensation for all of her work performed while on-call yet Defendant failed to correctly compensate her and other Respiratory Therapists for such.  As such, common factual allegations and legal theory predominate over any individual variations among Class Members.  *See, e.g.*, *Baudin*, 2020 WL 4732083, at \*5 (finding that allegations of failure to compensate for off the clock overtime hours constituted "common question of law and fact" that predominated over any individual questions); *Beebe*, 2020 WL 2833009, at \*5 ("the existence of a policy of paying employees minimum wage while not fully reimbursing them for their driving expenses is a common issue"); *Bravo*, 2015 WL 5826715, at \*3;  *Tiro*, 288 F.R.D. at 281.

### 2.  A Class Action Is A Superior Mechanism.

The second part of the Rule 23(b)(3) analysis compares whether "the class action is superior to other methods available for a fair and efficient adjudication of the controversy." *Tiro*, 288 F.R.D. at 281 ("Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [d]efendant.").  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish

to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiff and Class Members have limited financial resources with which to prosecute individual actions.  Additionally, Plaintiff is unaware of any pending litigation by individual Class Members concerning this controversy.[3]  The class device will also achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims.  *See, e.g.*, *Delijanin v. Wolfgang's Steakhouse, Inc.*, No. 18 Civ. 7854 (LJL)(KHP), 2021 WL 535635, at *3 (S.D.N.Y. Feb. 12, 2021); *Ray*, 2020 WL 5796203, at *5; *Baudin,* 2020 WL 4732083, at *5; *Karic*, 2015 WL 9433847, at *7; *Bravo*, 2015 WL 5826715, at *3; *Sukhnandan*, 2013 WL 4734818, at *3.  Thus, a class action is a superior mechanism.

## III.    F&S SHOULD BE APPOINTED AS CLASS COUNSEL

F&S should be appointed as Class Counsel.  Rule 23(g) sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

F&S meets all relevant criteria.  F&S did substantial work identifying, investigating, prosecuting and settling the claims, has substantial experience prosecuting and settling wage and hour class actions, is well-versed in wage and hour and class action law, and is well-qualified to represent the interests of the class.  Schaffer Decl. ¶¶ 46-47.  Numerous courts in this Circuit have found F&S to

---

[3] Opt-In Plaintiff Krista Hicks filed a class action alleging New Jersey wage claims, which the Parties have requested a stay in pending approval of this Settlement. Case No. 2:25-cv-02241-JXN-JBC. *See* **Exhibit A**, at ¶ 4.3.

be adequate class counsel in wage and hour class and collective actions. *See e.g. Smith v. Akela Contracting LLC et al*, No. 22 Civ. 01185, ECF No. 188 (S.D.N.Y. May 6, 2025); *McSpirit v. Coventbridge (USA) Inc.*, No. 20 Civ. 5754, ECF No. 26 (S.D.N.Y. July 15, 2021); *Almonte v. Marina Ice Cream Corp.,* No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *4 (S.D.N.Y. Dec. 8, 2016) ("F&S is comprised of experienced employment attorneys with a very good reputation among the employment law bar and have years of litigation experience in wage and hour matters in state and federal courts").

## IV.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The proposed Class Notice, which is annexed to the Schaffer Decl. as **Exhibit B** complies with due process and Fed. R. Civ. P. 23.  Rule 23(c)(2)(B) provides:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort…The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notices satisfy each of these requirements.  They explain the basis on which each Class Members' award was determined, the approximate amount of the Class Members' award, the allocation of attorneys' fees and costs, provides specific information regarding the date, time and place of the final approval hearing, and how to participate, object to or exclude oneself from the settlement.  This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  *See, e.g., Karic*, 2015 WL 1745037, at *11 ("Notice is adequate if it fairly apprises the prospective members . . . of the terms of the proposed

settlement and of the options that are open to them in connection with the proceedings.").

Courts in this Circuit routinely approve similar notices to the one proposed here. *See, e.g.*, *Delijanin*, 2021 WL 535635, at \*2; *Ray*, 2020 WL 5796203, at \*6; *Baudin*, 2020 WL 4732083, at \*9; *Bondi*, 2020 WL 2476006, at \*3.

The Settlement Agreement provides that the claims administrator will mail the Class Notices to the last known address of each Class Member within 30 days of the entry of the Court's order granting preliminary approval. **Ex. B**, Settlement Agreement ¶ 2.5(B). The claims administrator will also take all reasonable steps to obtain the correct address of any class members for whom the mailed version of the Class Notice is returned as undeliverable. ¶ 2.8. Class Members will have 60 days to opt out of or object to the settlement. *Id*. ¶¶ 2.6, 2.7.

## V.    PLAINTIFF ALSO SEEKS APPROVAL OF THE FLSA SETTLEMENT

Plaintiff also seeks approval of the settlement of the FLSA claims in addition to the Rule 23 claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23. *See, e.g.*, *Sukhnandan*, 2014 WL 3778173, at \*10. "[T]o warrant certification as a collective action under § 216(b) of the FLSA, the plaintiff must make at least 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Long*, 2015 WL 5444651, at \*12 (citation omitted). The Court has already granted conditional certification. ECF No. 70. As such, Plaintiff requests approval of the FLSA portion of the settlement as well for the same reasons set forth herein. *See e.g.*, *Cheeks v. Freeport Pancake House*, 796 F. 3d 199, 206 (2d Cir. 2015) ("stipulated dismissals settling FLSA claims with prejudice require the approval of the district court").

24

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's Counsel as Class Counsel, approve the Class and Collective Notices, appoint the Claims Administrator, and enter the proposed Order.

Dated: New York, New York
      September 12, 2025

Respectfully submitted,

*/s/ Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Classes*

## CERTIFICATION

As required by the Court's Individual Rules of Practice II.B. and Local Rule 7.1(c), I certify that the document contains 7,840 words, excluding the parts of the document that are exempted pursuant to Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Brian S. Schaffer*
Brian S. Schaffer

25

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Putative Classes*