UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA SCHILLER-EGLES, *on behalf of herself, individually, and on behalf of all others similarly situated, et al.*,

*Plaintiff*,

v.

THE PROMPTCARE COMPANIES, INC.,

*Defendant*.

No. 23-CV-6790 (KMK)

OPINION & ORDER

Appearances:

Armando Aguirre Ortiz, Esq.
Dana Marie Cimera, Esq.
Brian Scott Schaffer, Esq.
Fitapelli & Schaffer, LLP
New York, NY
*Counsel for Plaintiff*

Amanda Blair, Esq.
Seth Diamant Kaufman, Esq.
Fisher & Phillips
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff Linda Schiller-Egles ("Plaintiff"), on behalf of herself and all others similarly situated, brought this Action against Defendant PromptCare Companies, Inc., ("Defendant"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL") §§ 160 et seq. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Plaintiff's Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of

Plaintiff's Proposed Notice of Settlement and Class Action Settlement Procedure. (*See generally* Not. of Mot. for Prelim. Approval of Settlement, Conditional Cert. of Settlement Class, Appointment of Pl.'s Counsel as Class Counsel, and Approval of Pl.'s Proposed Not. of Settlement and Class Action Settlement Procedure ("Not. of Mot. for Prelim. Approval") (Dkt. No. 91).) For the following reasons, the Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

As alleged in the Complaint, Plaintiff has been employed by Defendant as a respiratory therapist in New York since approximately September 2019. (Compl. ¶ 56.) Defendant is a foreign corporation headquartered in New Jersey. (*Id.* ¶¶ 23–24.) Defendant provides respiratory products and infusion therapy services throughout the United States and operates over 40 locations across the country. (*Id.* ¶¶ 2–3.)

During their employment, Plaintiff and other respiratory therapists[1] were paid stipends for signing up to be "on call." (*Id.* ¶ 5.) Defendant paid Plaintiff and other respiratory employees an on call stipend of $25/day for weekdays, $50/day for weekend days, and $100/day for holidays. (*Id.* ¶ 57.) Plaintiff alleges that Defendant failed to pay Plaintiff and other

[1] Plaintiff's Complaint makes several references to "hourly workers." (*See, e.g.*, Compl. ¶ 5.) However, Plaintiff's claims are made on behalf of herself and other respiratory therapists, not herself and other hourly workers. *See Schiller-Egles v. PromptCare Companies, Inc.*, No. 23-CV-6790, 2025 WL 904331, at *14–15 (S.D.N.Y. Mar. 25, 2025) (certifying a conditional FLSA collective consisting of respiratory therapists who worked on-call for Defendant at any time between November 20, 2020, and the present); (Not. of Mot. for Prelim. Approval 1–2 (moving the Court to certify a class consisting of respiratory therapists who worked for Defendant in New York at any time between December 17, 2016, and January 1, 2023, and respiratory therapists who worked for Defendant outside of New York at any time between November 20, 2020, and January 1, 2023).) Thus, the Court will treat any reference to hourly workers as a reference to respiratory therapists.

respiratory therapists for their time worked while on call at their agreed upon rate, for hours up to and including 40 per workweek, (*id.* ¶ 89), and at their overtime rate, for hours above 40 per workweek, (*id.* ¶ 95).

Plaintiff also alleges that she and other respiratory workers are manual workers, such that Defendant is required to pay them no later than seven days after the end of the workweek in which their wages are earned. (*Id.* ¶¶ 9–10.) Plaintiff and other respiratory therapists are compensated by Defendant on a bi-weekly basis, (*id.* ¶ 8), and Plaintiff alleges that Defendant paid her and other respiratory therapists on an untimely basis and deprived them of the time-value of her wages. (*Id.* ¶¶ 66–67.) Lastly, Plaintiff alleges that Defendant failed to provide accurate wage statements that accounted for the correct number of hours that Plaintiff and other respiratory therapists worked for any given pay period. (*Id.* ¶ 13.)

Plaintiff asserts various wage and hour violations based on these allegations. Specifically, she asserts that Defendant: (1) failed to pay overtime wages for hours above 40 per workweek, in violation of FLSA (the "First Cause of Action"), (*id.* ¶ 85); (2) failed to pay wages at the agreed upon rate for hours worked while on call, for hours up to and including 40 per workweek, in violation of NYLL § 191(1)(d) (the "Second Cause of Action"), (*id.* ¶¶ 88–89); (3) failed to pay overtime wages for hours worked while on-call, for hours above 40 per workweek, in violation of Article 19 of the NYLL (the "Third Cause of Action"), (*id.* ¶¶ 93–95); (4) failed to pay timely wages, in violation of NYLL § 191(1)(a) (the "Fourth Cause of Action"), (*id.* ¶ 99); and (5) failed to supply accurate wage statements, in violation of NYLL § 195(3) (the "Fifth Cause of Action"), (*id.* ¶ 102).

Plaintiff brings her FLSA claim for overtime wages, the First Cause of Action, on behalf of herself and any respiratory therapists who worked on-call for Defendant at any time between

November 20, 2020, and the present, and who elect to opt-in to this Action (the "FLSA Collective").[2] *Schiller-Egles v. PromptCare Companies, Inc.*, No. 23-CV-6790, 2025 WL 904331, at *14 (S.D.N.Y. Mar. 25, 2025). Plaintiff brings her NYLL claims for agreed upon wages, overtime wages, failure to pay timely wages, and failure to provide accurate wage statements, the Second, Third, Fourth, and Fifth Causes of Action, on behalf of herself and a putative class consisting of respiratory therapists who worked for Defendant in New York between December 17, 2016 and January 1, 2023 and respiratory therapists who worked for Defendant outside of New York between November 20, 2020 and January 1, 2023.[3]

B. Procedural Background

Plaintiff initiated this Action on August 2, 2023. (*See* Compl.) From August 3, 2023 to August 9, 2023, the Parties exchanged letters regarding whether Defendant had improperly communicated with putative class and collective members and whether any remedies were appropriate. (*See* Dkt. Nos. 4, 8, 10, 11.) On September 15, 2023, the Court held oral argument on the issue and ordered Defendant not to communicate with potential class members about this Action without prior approval and directed the Parties to submit proposed language for a corrective notice. (Dkt. No. 18.) The Parties' proposed corrective notice language was approved

---

[2] Plaintiff initially brought her FLSA claim on behalf of herself and a putative FLSA Collective that includes all similarly situated persons who are or have been hourly workers for Defendant nationwide. (Compl. ¶ 35.) However, this Court has since certified a FLSA Collective limited to respiratory therapists who worked on-call for Defendant at any time between November 20, 2020 and the present. *Schiller-Egles*, 2025 WL 904331, at *14.

[3] Plaintiff initially brought her NYLL claims on behalf of herself and a putative class consisting of all hourly workers employed by Defendant in New York between December 17, 2016 and the date of final judgment in this matter. (Compl. ¶ 46.) However, in the instant Motion, Plaintiff moves the Court to certify a class consisting of current and former respiratory therapists employed by Defendant in New York between December 17, 2016 and January 1, 2023 and current and former respiratory therapists employed by Defendant outside of New York between November 20, 2020 and January 1, 2023. (Not. of Mot. for Prelim. Approval 1–2.)

on September 26, 2023. (Dkt. No. 24.) In October 2023, three individuals opted in to be a party plaintiff pursuant to the FLSA. (*See* Dkt. No. 25 (Joanne Utzman); Dkt. No. 26 (Krista Hicks); Dkt. No. 27 (Cesar Rosario).) After multiple extensions, Defendant filed a pre-motion letter pursuant to the Court's Individual Rules on March 30, 2024, requesting leave to file a motion to dismiss. (*See* Dkt. No. 37.) On April 12, 2024, Plaintiff responded. (*See* Dkt. No. 40.) On May 9, 2024, the Court held a pre-motion conference and set a briefing schedule. (*See* Dkt. Nos. 41, 43.)

On June 10, 2024, Defendant filed its Motion to Dismiss. (*See* Dkt. No. 44.) On July 19, 2024, Plaintiff responded. (*See* Dkt. No. 51.) On August 7, 2024, Defendant replied. (*See* Dkt. No. 54.) On October 2, 2024, Plaintiff filed a Motion for Preliminary FLSA Certification. (*See* Dkt. No. 61.) On October 16, 2024, Defendant filed its Opposition. (*See* Dkt. No. 64.) On October 23, 2024, Plaintiff replied. (*See* Dkt. No. 67.) On March 25, 2025, the Court issued an Opinion and Order denying Defendant's Motion to Dismiss and granting Plaintiff's Motion for Preliminary FLSA Certification. *See Schiller-Egles*, 2025 WL 904331, at *16.

On April 24, 2025, the Parties informed the Court that they were engaged in settlement discussions. (*See* Letter from Seth D. Kaufman, Esq., to Court (Apr. 24, 2025) (Dkt. No. 73).) On April 29, 2025, Defendant filed its Answer to Plaintiff's Complaint. (*See generally* Answer (Dkt. No. 76).) On July 1, 2025, the Parties informed the Court that they had reached a settlement agreement. (*See* Letter from Seth D. Kaufman, Esq., to Court (July 1, 2025) (Dkt. No. 82); Decl. of Brian S. Schaffer, Esq., in Support of Pl.'s Mot. for Prelim. Approval ("Schaffer Decl.") Ex. B. (the "Settlement Agreement") (Dkt. No. 92).) On September 12, 2025, Plaintiff filed her Motion for Preliminary Approval of Settlement. (*See generally* Not. of Mot. for Prelim. Approval.)

## II. Discussion

### A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Therefore, the Court must be satisfied the parties' agreement is "fair and reasonable." *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In deciding the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . ., the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B. Analysis

1. Preliminary Approval of Settlement Under *Cheeks*

a. Whether the Settlement Amount is Fair and Reasonable

Because the Settlement Agreement purports to dismiss Plaintiff's FLSA claim (in addition to Plaintiff's four NYLL claims) with prejudice, the Settlement Agreement requires the approval of the Court. (*See* Settlement Agreement 2 ("[U]pon Court approval of this Agreement[,] [this Action] shall be dismissed in its entirety and with prejudice as to the Defendant . . . .").) Thus, the Court must be satisfied that the Settlement Agreement is fair and reasonable.

The first factor used to determine whether a settlement reviewed pursuant to *Cheeks* is fair and reasonable is "the plaintiff's range of possible recovery." *Wolinsky*, 900 F. Supp. 2d at 335. The Court applies this factor by determining the plaintiff's best possible recovery (assuming the plaintiff prevailed on their claims), and assessing whether the settlement amount, after the deduction of attorneys' fees and costs, represents a reasonable proportion of the plaintiff's best possible recovery. *See, e.g.*, *Burgos v. JAJ Contract Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *3 (S.D.N.Y. Aug. 14, 2024) (finding that a settlement amount was fair and reasonable when the plaintiff's "total unpaid wages amounted to $26,592.13, an equal amount in liquidated damages," and the settlement amount "represent[ed] 29.7% of that best-case figure"); *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) (finding that a settlement amount was fair and reasonable when the amount, after the deduction of attorneys' fees and costs, represented "29% of [the plaintiff's]

total alleged damages."). The Court has previously found that a settlement amount represents a reasonable percentage of the plaintiff's best possible recovery when it "is a substantial proportion of the maximum possible recovery he identifies." *Beckert v. Ronirubinov*, No. 15 - CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015).

Plaintiff estimates her best possible recovery to be $497,512.654 ("Plaintiff's Estimate"). (Schaffer Decl. 5, n.1.) Pursuant to the Settlement Agreement, Defendant agrees to pay $325,000 (the "Gross Settlement Amount") to resolve Plaintiff's claims. (Settlement Agreement 15.) Plaintiff asserts that the Gross Settlement Amont represents "approximately 70% of [Plaintiff's] unpaid wage damages . . . ." (Schaffer Decl. 5, n.1.) Plaintiff's Counsel seeks $108,333.33 from the Gross Settlement Amount in attorneys' fees and $5,000 in costs, leaving an amount, after deductions, of $211,666.67 (the "Net Settlement Amount"). (Settlement Agreement 16.) Thus, the Net Settlement Amount represents approximately 42.5% of Plaintiff's Estimate. If Plaintiff's Estimate is an accurate estimate of Plaintiff's best possible recovery, such a percentage would favor finding the Net Settlement Amount to be fair and reasonable, as the Court has found that significantly lesser percentages can be fair and reasonable. *See, e.g.*, *Beckert*, 2015 WL 8773460, at *2 (holding that a settlement sum representing approximately 25% of the plaintiff's best possible recovery was fair and reasonable); *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (holding that a settlement amount representing approximately 31% of the plaintiff's best possible recovery was fair and reasonable). However, the Court is unable to accept Plaintiff's Estimate as a proper calculation of Plaintiff's best possible recovery and thus is unable to conclude that the Net Settlement Amount is fair and reasonable, for two reasons.

First, the Settlement Agreement is not sufficiently specific with respect to Plaintiff's Estimate. In particular, Plaintiff does not describe the methodology used to arrive at her Estimate, or the data which was used as a basis for it. (*See generally* Settlement Agreement.) The Court has previously held that "it does not have sufficient information" to determine if a settlement amount is fair and reasonable when a plaintiff "does not provide an explanation of the methodology used to calculate [the] amount, or the underlying data on which the calculation is based." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131, 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021); *see also Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (finding that "the Court does not have sufficient information to determine whether the settlement sum is fair and reasonable" when the plaintiff "does not provide an explanation of the methodology used to calculate [their estimate], or the underlying data . . . .").

Second, Plaintiff's Estimate is flawed because it is "not inclusive of liquidated damages . . . ." (Schaffer Decl. 5, n.1.) The Second Circuit has held that, "[u]nder the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citation omitted); *see also Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58, 60 (2d Cir. 2018) ("Absent a showing of good faith, the FLSA provides for liquidated damages equal to unpaid wages and overtime recovered." (citation omitted)).[4] The Court has previously found a plaintiff's estimate

---

[4] FLSA provides an escape hatch to violators to the extent that, upon a showing of subjective good faith and objective reasonableness, a district court may decline to award liquidated damages to a prevailing plaintiff. *See Garcia v. JonJon Deli Grocery Corp.*, No. 13 - CV-8835, 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11, 2015) (providing that the court has "discretion to deny liquidated damages where the employer shows that . . . it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not

of their best possible recovery to be erroneous when the estimate failed to account for liquidated damages. *See Cronk*, 2021 WL 38264, at *4 (finding that the plaintiff's estimate of their best possible recovery for their FLSA claim was erroneous because it did not account for liquidated damages). While Plaintiff has also brought four NYLL claims, under NYLL § 198(1), "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," an employee is entitled to "liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . . ." NYLL § 198(1); *see also, e.g.*, *Yagui v. Republic Bar and Lounge Inc.*, No. 25-CV-2674, 2026 WL 1296762, at *23 (S.D.N.Y. May 12, 2026) (awarding liquidated damages equal to actual damages for the plaintiff's NYLL claims). Since Plaintiff's Estimate appears to account only for actual damages, (Schaffer Decl. 5 n.1), the Court could adjust Plaintiff's Estimate, by doubling it, to account for liquidated damages. However, the Court is unable to do so because when a plaintiff brings FLSA and NYLL claims in a single Action, rather than receiving liquidated damages under both statutes, the plaintiff can only receive liquidated damages for whichever claim resulted in greater actual damages. *See, e.g.*, *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (interpreting "the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct" and finding that "the plaintiff should receive the larger of the two liquidated damages awards"); *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016) (awarding the plaintiffs overlapping liquidated damages for both their FLSA and NYLL claims, such that the plaintiffs' recovery was set by their larger NYLL claim). Consequently, to adjust

---

violate the FLSA.") (citation and quotation marks omitted). However, when assessing Plaintiff's *best* possible recovery, the Court, logically, must consider a scenario in which Defendant either did not raise or failed to prevail on a good faith defense.

Plaintiff's Estimate to account for liquidated damages, the Court must know whether Plaintiff would be eligible to receive liquidated damages under the FLSA or the NYLL, and to determine that, the Court must know what proportions of Plaintiff's Estimate are attributable to Plaintiff's FLSA claim, as opposed to Plaintiff's NYLL claims. Here, the Court lacks the information to make that determination because the Settlement Agreement, in providing Plaintiff's Estimate, does not distinguish between her FLSA and NYLL claims.[5] (*See generally* Settlement Agreement.)

b. Good Faith

The Court next turns to the remaining *Wolinsky* factors, which include

> (2) the extent to which the settlement agreement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335. These factors favor approval of the Settlement Agreement. In assessing the last four *Wolinsky* factors, the Court relies on the representations made by the Parties, including representations made in the Settlement Agreement itself. *See, e.g.*, *Cronk*,

[5] Plaintiff's Fourth Cause of Action is brought under NYLL § 191(1)(a). (Compl. ¶ 99.) Pursuant to NYLL § 198(1)(a), "liquidated damages shall not be applicable to violations of [§ 191(1)(a)] where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly." NYLL § 198(a)(1). Here, Plaintiff does not allege that Defendant failed to pay Plaintiff or other members of the FLSA Collective less frequently than semi-monthly. (*See* Compl. ¶ 8 (alleging that "Defendant has compensated Plaintiff . . . on a bi-weekly basis.").) Thus, when calculating Plaintiff's best possible recovery, even if the estimate includes an award of liquidated damages under the NYLL, liquidated damages would only be included for Plaintiff's Second, Third, and Fifth Causes of Action, as those claims are not brought pursuant to NYLL § 191(1)(a). (Compl. ¶¶ 88, 93, 103.) Consequently, to assess Plaintiff's Estimate, or adjust Plaintiff's Estimate to account for liquidated damages, in addition to knowing what proportions of Plaintiff's Estimate are attributable to Plaintiff's FLSA claim and NYLL claims, respectively, the Court must also know the proportion of Plaintiff's Estimate that is attributable to each of Plaintiff's NYLL claims.

2021 WL 38264, at *5 (finding that the second, fourth, and fifth *Wolinsky* factors were satisfied based on the parties' representations); *Rojas*, 2018 WL 4931540, at *3 (finding that the second *Wolinsky* factor was satisfied based on the parties' representations).

First, the Court is satisfied that the Settlement Agreement will enable the Parties to avoid the anticipated burdens and risks of litigation. According to its terms, "the Parties agree that there are *bona fide* disputes between them . . . and agree that it is desirable . . . to avoid further expense and uncertain, burdensome, and protracted litigation." (Settlement Agreement 2); *see also Rojas*, 2018 WL 4931540 at *3 (finding that the second *Wolinsky* factor was met when there were "fact-intensive disputes between the Parties" and that settlement "prevent[ed] the [p]arties from the risks associated with going to trial"). Second, the seriousness of the litigation risks faced by the Parties favors approval. Plaintiff "recogniz[es] the substantial risks of continued litigation, including the possibility that the [l]itigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and would not occur for several years . . . ." (Settlement Agreement 2.) Third, the Court is satisfied that the Settlement Agreement is the product of arm's-length bargaining between experienced counsel as it states that "[t]he Parties have negotiated all the terms and conditions of the Agreement at arms' length." (Settlement Agreement 22.) Fourth, the Court is satisfied that there was no fraud or collusion because neither Party has indicated as such and the Settlement Agreement appears to be the product of extensive settlement discussions between experienced counsels. (*See* Schaffer Decl. 9 (listing several wage and hour actions prosecuted by Plaintiff's counsel)); *Burgos*, 2024 WL 3834147, at *3 (finding that there was no fraud or collusion when a settlement "was reached over several weeks of negotiations between counsel experienced in wage-and-hour disputes").

c. Release Provision

The Court "will not approve settlement agreements that contain overly broad release provisions . . . ." *Cronk*, 2021 WL 38264, at *5; *Rojas*, 2018 WL 4931540, at *3 (same). A release provision is overly broad when it would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues . . . ." *Cheeks*, 796 F.3d at 206 (quotation marks omitted) (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."). A release provision "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (quoting *Lopez*, 96 F. Supp. 3d at 181); *Pascual*, 2023 WL 1518513, at *4 (same).

Here, the Settlement Agreement's release provision provides that:

> By operation of the entry of the Final Approval Order, except as to such rights or claims as are created by this Agreement, each individual Participating Collective Member forever and fully releases Defendant . . . for any and all claims that were asserted or have been asserted based on the facts alleged in [this Action], and for any and all claims for any minimum wage and overtime wage-and-hour violations, any and all claims for unpaid wages and overtime wages, delayed payment of wages, failure to maintain and furnish employees with proper wage notices, failure to provide true and accurate wage statements and record keeping violations, and all other claims related to the payment of wages, whether known or unknown, under the [FLSA] and any state, and/or local wage-and-hour laws through January 1, 2023.

(Settlement Agreement 19–20 (the "Release Provision").) The portion of the Release Provision which purports to release "any and all claims that were asserted or have been asserted based on

the facts alleged in [this Action]" is permissible. While it covers claims not at issue in this Action, including unknown claims, by including a limitation to claims "based on the facts alleged in [this Action,]" its scope is limited to claims that share an identical factual predicate with the claims raised in the Complaint. However, the second portion of the Release Provision, which waives specific types of claims, such as claims for unpaid wages and overtime wages, is overly broad. While it only covers claims with a relationship to wage and hour issues, it waives "any and all claims" covered by its terms, and is not limited to claims that share an identical factual predicate with the claims listed in the Complaint. For example, if Plaintiff or another member of the FLSA Collective has a FLSA claim that is not at issue in this Action and does not share a factual predicate with any claim asserted in this Action, it would be waived under the terms of the Release Provision. In sum, while the Release Provision contains some limitations, it is not narrow enough for a settlement agreement governed by *Cheeks*.

d. Attorneys' Fees

"Under both [the] FLSA and the [NYLL], a successful plaintiff—including one who settles—is entitled to attorneys' fees." *Rojas*, 2018 WL 4931540, at *4; *see also Lizondro-Garcia v. Kefi LLC*, No. 12 -CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) ("Under the FLSA, a court shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant . . . [and the NYLL] also provides that a successful plaintiff may recover attorneys' fees . . . ." (quotation marks omitted)). The fee award may be a percentage of the total amount recovered by the plaintiff. *See Burgos*, 2024 WL 3834147, at *4 (awarding attorneys' fees when the plaintiff's counsel sought a fee award representing one-third of the settlement amount); *Rojas,* 2018 WL 4931540, at *4 (holding that "one-third of the settlement sum, is a reasonable fee"). However, even when attorneys' fees are

sought as a proportion of the amount recovered by the plaintiff, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). Specifically, a request for attorneys' fees should include "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Burgos*, 2024 WL 3834147, at *4 (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Rojas*, 2018 WL 4931540, at *4 (same). Further, "courts must independently assess the reasonableness of [the] plaintiff's attorney's fees, even when the fee is negotiated as part of the settlement." *Cegueda-Juarez v. Cleanwear USA 2, Inc.*, No. 18-CV-1604, 2019 WL 5485253, at *2 (S.D.N.Y. Oct. 25, 2019) (citing *Lazaro-Garcia*, 2015 WL 9162701, at *3).

Plaintiff's Counsel is seeking $108,333.33 in attorneys' fees. (Settlement Agreement 16.) Pursuant to the Settlement Agreement, the fee award would be deducted from the Gross Settlement Amount. (*Id.*) The fee award sought by Plaintiff's Counsel represents approximately one-third of the Gross Settlement Amount. (*Id.* 15–16.) While "courts in the Second Circuit routinely award attorney fees in FLSA cases of approximately one-third of the total recovery[,]" *Burgos*, 2024 WL 3834147, at *4 (citations omitted), this Court has denied fee awards representing one-third of the total recovery when the amount would be unreasonable, *see Cegueda-Juarez*, 2019 WL 5485253, at *2 (denying a fee award of one-third of the settlement amount when the amount would constitute an "oversized award"). Here, Plaintiff has submitted no factual basis for the requested fee award. Specifically, Plaintiff has not provided contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done. (*See generally* Dkt.) Consequently, the Court is unable to

independently assess whether, in this Action, a fee award representing one-third of the Settlement Amount is reasonable.

2. Conditional Certification of the Settlement Class

a. Legal Standard for Class Certification

For purposes of effectuating the Settlement Agreement, Plaintiff seeks conditional certification of a class comprised of "[a]ll current and former respiratory therapists who worked [at] PromptCare in New York during the time period of December 17, 2016 through January 1, 2023; and who worked outside of New York during the time period of November 20, 2020 through January 1, 2023" (the "Class"). (Not. of Mot. for Prelim. Approval 1–2.) However, "the existence of a settlement does not mandate certification." *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2018 WL 3217410, at *4 (S.D.N.Y. July 2, 2018). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of [Federal] Rule [of Civil Procedure] 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 489 (S.D.N.Y. 2018) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."). Under Federal Rule of Civil Procedure 23(a) ("Rule 23"):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[6]

[6] The requirements of Rule 23(a)(1)–(4) are often referred to, and will be referred to herein, as the (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy requirements.

Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of proving that the proposed class meets each of the requirements of Rule 23(a) by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (holding that "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements"). "If each of these four threshold requirements are met, class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Fraticelli*, 2018 WL 3217410, at *3.

b. Rule 23(a)

The Settlement Class meets the four threshold requirements imposed by Rule 23(a). First, the Class satisfies the numerosity requirement. "The numerosity requirement of Rule 23(a)(1) is presumed satisfied for classes with more than [40] members." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (citation omitted); *In Re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) ("numerosity is presumed when a class consists of 40 or more members") (quotation marks and citation omitted). Here, "[t]here are more than [50] members [in] the [Settlement Class]." (Compl. ¶ 48.) Consequently, the numerosity requirement is presumptively satisfied, and Defendant has, for purposes of effectuating the Settlement Agreement, "agree[d] to . . . class certification pursuant to Rule 23 of the [FRCP] to include all [c]lass [m]embers as defined in [the Settlement Agreement]." (Settlement Agreement 7.)

Second, the Settlement Class satisfies the commonality requirement. To satisfy the commonality requirement, class members' claims must "depend upon a common contention" that is "capable of classwide resolution . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiff asserts that "[she] and the [Class Members] have all been injured . . . due

to Defendant's common policies, practices, and patterns of conduct." (Compl. ¶ 50.) This is a common contention, capable of classwide resolution, that Plaintiff's claims depend upon. For example, the factual basis for Plaintiff's Second and Third Causes of Action is that Defendant "failed to pay Plaintiff and [the Class Members] . . . at their agreed upon rate of pay," (Compl. ¶ 89), and "the premium overtime wages to which they were entitled under the NYLL," (Compl. ¶ 94), for hours worked while on call. Consequently, Plaintiff's Second and Third Causes of Action depend upon the common contention that it was Defendant's policy, practice, or pattern of conduct to, in effect, not pay Plaintiff and the Class Members in accordance with the NYLL while they were on call, and if Plaintiff is able to prove the existence of such a policy, it would drive the classwide resolution of Plaintiff's NYLL claims. *Cf. Ramirez*, 39 F. Supp. 3d at 363 (holding that "[t]he common contention of a classwide policy of denying compensation for pre- and post-shift on-the-clock work" was "sufficient to satisfy the commonality requirement of Rule 23(a)(2)").

Third, the Settlement Class satisfies the typicality requirement. "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). However, "[t]he central inquiry in a typicality evaluation is whether 'each class members['] claims arise from the same course of events and each class member makes similar legal arguments to prove [the] defendant's liability.'" *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 127–128 (S.D.N.Y. 2011) (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698, 2005 WL 106985, at *2 (S.D.N.Y. Jan. 19, 2005)). Here, the claims of Plaintiff and each Class Member arise from the same course of events because the claims arise from the same policies, practices, and patterns of conduct attributed to Defendant. The allegation that those common policies, practices, and patterns of conduct violate provisions of

the NYLL is a legal argument, that bears on Defendant's liability, that is common to the claims of each Class Member. *Cf. Espinoza*, 280 F.R.D. at 128 (holding that the typicality requirement was satisfied when "the minimum wage and overtime claims alleged by [the] [p]laintiffs [were] similar to those of the class members and ar[o]se from the same allegedly unlawful practices and policies").

Fourth, the Settlement Class satisfies the adequacy requirement. The adequacy requirement is assessed "by looking to the qualifications of [the] plaintiff's counsel" and "by examining the interests of the named plaintiffs." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d. Cir. 2000)). Here, Plaintiff's counsel is sufficiently qualified to satisfy the adequacy requirement. In particular, Plaintiff's counsel "has significant experience prosecuting wage and hour class and collective actions" in which they were "appointed class counsel." (Schaffer Decl. 9.) Plaintiff cites several cases as evidence of Plaintiff's counsel's experience, many of which were prosecuted in this Court. (*Id.*) *Cf. Ramirez*, 39 F. Supp. 3d at 365 (finding the plaintiff's counsel was sufficiently qualified to satisfy Rule 23(a)(4)'s adequacy requirement when they had "pursued a number of similar actions and vigorously litigated the action before th[e] [c]ourt"). Next, when assessing the interests of the named plaintiffs, the Second Circuit has held that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. Here, Plaintiff has an interest in vigorously pursuing the claims of the Class because, the Court presumes, Plaintiff would like to recover for her own injuries. Neither this interest, nor any other interests attributable to Plaintiff, puts Plaintiff in a position that is antagonistic to the other class members.

c. Rule 23(b)

Of the three alternative criteria provided by Rule 23(b), Plaintiff points to Rule 23(b)(3) as a proper basis for certification of the Settlement Class. (Not. of Mot. for Prelim. Approval 1.) Rule 23(b)(3) is satisfied when:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). In sum, Rule 23(b)(3) contains two prongs, a predominance requirement and a superiority requirement. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 67–68 (S.D.N.Y. 2018) (distinguishing between the predominance and superiority requirements expressed in Rule 23(b)(3)). When assessing the predominance requirement, "the inquiries into commonality, typicality, and predominance often overlap . . . ." *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016). However, the Supreme Court has held that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The Second Circuit has held that "the [predominance] requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). When assessing the superiority requirement, courts have held that "a class action is superior [when] . . . potential class members are aggrieved by the

same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (citing *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007), and *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006)).

Here, the Class satisfies the predominance requirement because the factual and legal questions common to each class member predominate over any factual or legal questions affecting only individual class members. Plaintiff asserts that the injuries suffered by class members that form the basis for their NYLL claims were caused by "Defendant's corporate-wide policies and practices" which "affected everyone in the [Class] similarly . . . ." (Compl. ¶ 50.) For example, Plaintiff's Second Cause of Action, which alleges that Defendant violated the NYLL by failing to pay Plaintiff and class members "at their agreed upon rate of pay" for hours worked on call, is based on what Plaintiff describes as Defendant's "common policies." (Compl. ¶¶ 89–90.) Consequently, the predominant factual question implicated by Plaintiff's Second Cause of Action (whether it was Defendant's common policy to not pay class members at their agreed upon rate of pay for hours worked on call), and the predominant legal question implicated by Plaintiff's Second Cause of Action (whether this common policy constitutes a violation of the NYLL), are common to each class member. The same can be said of Plaintiff's Third, Fourth, and Fifth Causes of Action. (*See* Compl. ¶¶ 94, 99, 102 (asserting that Defendant failed to pay class members overtime wages, pay class members on a timely basis, and provide class members with accurate wage statements, in violation of the NYLL).) Further, these questions are capable of being resolved through generalized proof, such as proof of "Defendant's common policies,

practices, and patterns of conduct" which Plaintiff asserts is the cause of the injuries suffered by Plaintiff and the class members. (Compl. ¶ 50.)

The Settlement Class also satisfies the superiority requirement because a class action is superior to any other method for fairly and efficiently adjudicating the Action. The class members are aggrieved by the same policy. While Plaintiff's Complaint does not assert that damages suffered by each class member are small in comparison to the expense and burden of individual litigation, Defendant is a corporation which "provides respiratory products and infusion therapy services throughout the United States." (Compl. ¶ 2.) As Plaintiff notes, "individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants." (Compl. ¶ 53.) Consequently, the expense and burden of individual litigation may dissuade class members from prosecuting their claims in the absence of a class action. Further, potential class members are currently employed by Defendant, given that the Class includes current respiratory therapists. Class members who still work for Defendant may be further discouraged from pursuing their individual claims due to fear of retaliation.

3. Appointment of Plaintiff's Counsel as Class Counsel

Plaintiff next seeks the appointment of Plaintiff's counsel as class counsel. Under Rule 23(g)(1), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A). However, the court may also "consider any other matter pertinent to class counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ P. 23(g)(1)(B).

The factors expressed in Rule 23(g)(1) support the appointment of Plaintiff's counsel as class counsel. First, "[b]efore initiating [this Action], [Plaintiff's counsel] conducted a thorough investigation into Defendant's business and ownership." (Schaffer Decl. 2.) The investigation "included research into [Defendant's] wage and hour policies and/or practices" and "factual and legal research into the underlying merits of Plaintiff's claims and possible defenses." (*Id.*) Plaintiff's counsel also interviewed Plaintiff and subsequently "determine[d] the hours that respiratory therapists . . . were working" and "discovered evidence seemingly showing that Defendant required [r]espiratory [t]herapists to perform work while 'on call' without paying them for all of their time worked." (*Id.*) In sum, Plaintiff's counsel has done significant work to identify and investigate the claims in this Action. As noted below, Plaintiff's counsel has significant experience in handling class actions, including wage and hour disputes similar to this Action. *See supra* Section II(B)(2)(b) ("Plaintiff cites several cases as evidence of Plaintiff's counsel's experience, many of which were prosecuted in this Court."). Third, given their significant experience, the Court is satisfied that Plaintiff's counsel has sufficient knowledge of the applicable law.

4. Preliminary Approval of Settlement under Rule 23(e)

Under Rule 23(e), the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Prior to final approval of a settlement under Rule 23(e), where "notice of a hearing is given to the class members, where class members and settling parties are

provided the opportunity to be heard on the question of final approval[,]" the court must provide preliminary approval of the settlement. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (citing *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). At the preliminary approval stage, "[t]he [c]ourt must consider whether it will likely be able to . . . 'approve the proposal under Rule 23(e)(2).'" *Whelan v. Diligent Corp.*, 349 F.R.D. 79, 84 (S.D.N.Y. 2025) (citing *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019)); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (same). Under Rule 23(e)(2):

> [T]he court may approve [the settlement] only . . . on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing and payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court is satisfied that most of the Rule 23(e)(2) factors support preliminary approval of the Settlement Agreement. First, Rule 23(e)(2)(A)'s adequacy requirement overlaps with Rule 23(a)(4)'s adequacy requirement. *See Whelan*, 349 F.R.D. at 84–85 (describing the requirements of Rule 23(e)(2)(A)). Here, the adequacy requirement is satisfied. *See supra* Section II(B)(2)(b) (finding that the adequacy requirement is satisfied due to the qualifications of Plaintiff's counsel, Plaintiff's interest in vigorously litigating the Action, and Plaintiff's lack of interests antagonistic to class members). Second, the Court is satisfied that the proposal was negotiated at arm's length. *See supra* Section II(B)(1)(b) ("[T]he Court is satisfied that the Settlement Agreement is the product of arm's-length bargaining between experienced counsel.").

Third, the Court is satisfied that the proposal treats the class members equitably. This Court has held that an allocation formula treats class members equitably when it turns on "objective, ascertainable, and fair characteristics," including "class members' verified harms and their available causes of action." *Whelan*, 349 F.R.D. at 87. Pursuant to the Settlement Agreement, all class members will be paid according to the same formula, with points assigned to a class member for each week they worked for Defendant between December 17, 2016 and January 1, 2023, the period relevant to membership in the Class. (*See* Settlement Agreement 17 (providing that each class member who did not receive a release payment will receive 2 points for each week worked during the relevant period, whereas each class member who received a release will receive 0.5 points).) Consequently, the allocation formula turns on objective, ascertainable, and fair characteristics, namely the extent of the injury each member of the Settlement Class suffered.

However, the Court is unable to determine whether the relief provided to the Settlement Class is adequate under Rule 23(e)(2)(C). The analysis of the Settlement Agreement's compliance with Rule 23(e)(2)(C) overlaps with the Court's analysis of the Settlement Agreement's compliance with *Cheeks*. When assessing Rule 23(e)(2)(C), the Court considers, among other factors, the proportion of a plaintiff's maximum possible recovery provided by the settlement amount, and how that proportion compares to settlement agreements which have previously been approved in the Second Circuit. *See, e.g.*, *Piney v. City of New York*, No. 25-CV-671, 2026 WL 1345920, at *8 (S.D.N.Y. May 14, 2026) (finding that a settlement agreement satisfied Rule 23(e)(2)(C) in part because the settlement amount represented 65% of the plaintiff's maximum possible recovery, which was comparable to the recovery in other settlements approved within the Second Circuit); *Marin v. 310 Bowery Grp. LLC*, No. 24-CV-

1340, 2025 WL 893731, at *7 (Mar. 24, 2025) (finding that a settlement agreement satisfied Rule 23(e)(2)(C) in part because the settlement agreement represented 17% of the plaintiff's maximum possible recovery, which was comparable to the recovery in other settlements approved within the Second Circuit). Generally, courts favor a settlement that "results in substantial and tangible present recovery." *Piney*, 2026 WL 1345920, at *8 (quoting *Sykes v. Harris*, No. 09-CV-8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016). Here, the Court is unable to determine what proportion of Plaintiff's maximum possible recovery the Net Settlement Amount accounts for because Plaintiff's Estimate failed to include liquidated damages and the Settlement Agreement lacks the specificity the Court would need to adjust Plaintiff's Estimate to account for liquidated damages. *See supra* Section II(B)(1)(a) ("[T]o adjust Plaintiff's Estimate to account for liquidated damages, the Court must know whether Plaintiff would be eligible to receive liquidated damages under the FLSA or NYLL, and to determine that, the Court must know what proportions of Plaintiff's Estimate are attributable to Plaintiff's FLSA claim, as opposed to Plaintiff's NYLL claims.").

5. Notice

Plaintiff next seeks approval of her Notice of Class Action Settlement. (*See generally* Schaffer Decl. Ex. C. (the "Settlement Notice").) Under Rule 23(c)(2)(B), for classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice must describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* In sum, the settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Whelan*, 349 F.R.D. at 90 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005), *superseded on other grounds by Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (same).

Here, the Court is satisfied that the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B). First, the Settlement Notice describes the nature of the Action, stating that "Plaintiff alleges Defendant failed to pay respiratory therapists their regular rate of pay for all hours worked or overtime compensation . . . for every hour worked over 40 per workweek for certain work performed while on[ ]call in violation of the [FLSA] and [the NYLL]." (Settlement Notice 1.) Second, the Settlement Notice defines the Class, as the Settlement Notice is addressed to "[a]ll current and former respiratory therapists who worked on[]call for [Defendant] in New York from December 17, 2016[] through January 1, 2023." (*Id.*) Third, the Settlement Notice provides additional information regarding the issues faced by the Settlement Class, such as "the risks or delays of further litigation." (*Id.* 2.) Fourth, the Settlement Notice specifies that if class members "want to be represented by [their] own lawyer, [they] may hire one . . . ." (*Id.* 6.) Fifth, the Settlement Notice informs class members that they "can opt out of the settlement by requesting to be excluded from the settlement." (*Id.* 4.) Class members are also instructed that, to request exclusion, they "must do so in writing, no later than 60 days after the [c]laim [f]orms were mailed." (*Id.*) Lastly, the Settlement Notice informs class members of the binding effect of a class judgment by including language from the Release Provision. (*Id.*) Overall, the Court is satisfied that the Settlement Notice apprises class members of the terms of the Settlement

Agreement and the options available to them. For example, the Settlement Notice includes a section summarizing the options available to each class member (those options being to do nothing, seek exclusion, or object), with instructions on how each option can be pursued. (*Id.* at 3.)

III. Conclusion

For the reasons set forth above, Plaintiff's Motion is granted with respect to Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement and Class Action Settlement Procedure. Plaintiff's Motion is denied with respect to Preliminary Approval of Settlement without prejudice to renewal. The Parties are to submit a supplemental application for approval of the settlement within 30 days of this Order. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 91.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York



KENNETH M. KARAS
United States District Judge